## RICHARDS *vs.* BUTLER & CARROLL.

1. A charge not warranted by the evidence should not be given.
2. Partners may dissolve *inter sese* by consent, but in order to relieve a retiring partner from liability to one who has dealt, and continues to deal, with the firm on the faith of his being a member, notice of the dissolution is necessary; especially where the firm name remains unchanged.
(*a*) Actual notice is required. Therefore, a publication in a paper which does not circulate in the vicinity where the person to be notified resides, without more, would not be sufficient.
3. The verdict is not contrary to law or evidence, except in so far as controlled by the erroneous charge.

Charge of Court. Partnership. Notice. New Trial. Before Judge SPEER. Newton Superior Court. March Term, 1880.

Reported in the decision.

J. J. FLOYD; J. N. GLENN; HOPKINS & GLENN, for plaintiff in error.

CLARK & PACE, for defendants.

HAWKINS, Justice.

Butler & Carroll, on the twenty-first day of August, 1879, brought suit against Ayers & Co., a firm,. as they allege, comprised of Lucien Smith, F. M. Ayers and Henry Richards, for the recovery of four hundred and twenty-three dollars and sixty-two cents, upon an account for the years 1877 and 1878; fifty dollars of the same being for the year 1877, balance in 1878, and that of 1877 was a consignment of merchandise.

To this action, Richards pleaded that he was not a partner in said firm in 1878, and that the consigned goods were undisposed of and subject to the order of plaintiffs', except a small amount which had been sold and proceeds paid to plaintiffs; balance had not been demanded.

A trial of the cause resulted in a verdict for plaintiffs for the full amount of the account. The defendant made a motion for a new trial, which was overruled and a writ of error to this court was had, asking a reversal of the court's decision refusing to grant a new trial upon the grounds taken in the motion.

It appears that in the years 1876–7, F. M. Ayres and Henry Richards were partners in the mercantile business, in the town of Conyers, Georgia, under the firm name and style of Ayers & Co.; and on the sixteenth day of January, 1878, the said Richards withdrew from said firm, and Lucien Smith was introduced in his stead, and the business was continued under the same name, of Ayers & Co.

Carroll testified that the account was correct and unpaid. The bill made in 1877 was goods sent on consignment to defendants; had received ten dollars on it; de-

manded pay for the goods, but had never demanded of defendants the goods. The bill of goods was not sold to defendants, but was consigned. The bill made in 1878 was sold to defendants. Defendants, Ayers and Richards, commenced business in Conyers as partners in 1875 or 1876, perhaps in 1877. He knew Richards was connected with it by reason of said goods being consigned to them. Lucien Smith, one of the defendants, told witness, about the first of the year 1878, that he was coming to Conyers to go into business with Ayers & Co.. to-wit: with F. M. Ayers and H. T. Richards, and that Richards was going to give Smith an interest down there. Witness did not think Ayres had much money or property. Richards was a man of property.

L. T. Livingston swore that Ayers and Richards did business as co-partners in Conyers, Georgia, in 1876, 1877, and also 1878, so far as he knew, he traded with said firm— bought goods from them, etc.—and knew Richards was a partner; frequently saw Richards in and about the store of Ayres & Co. in the above named years. Richards is a man of means; had relatives and owned property in Con-yers. The sign of Ayers & Co. was over the door in the above named years, and is there now, so far as witness knows. Witness saw Richards hauling goods from the store of Ayers & Co. in 1879. Said goods were sold at sheriff's sale as goods of said firm.

Defendant, Richards, swore that he and Ayers com-menced business in Conyers, Georgia, as partners, in the spring of 1877; that the business was carried on under the name of Ayers & Co. On the sixteenth day of January, 1878, witness and Ayers dissolved copartner-ship and settled up their business; that Lucien Smith then went in said house with Ayers as partner, and Ayers and Smith carried on the business, as far as witness knows, under the firm name of Ayers & Co., at the same place. After witness and Ayers so dissolved, he never in any way had any interest after that time with said firm;

received none of the profits, nor was he to receive any, nor was he to be in any way responsible for their debts or losses.    The business was carried on in the name of Ayers & Co. by Ayers and Smith under said name, Ayers & Co., against witness' objections.    Saw Mr. Carroll, one of the plaintiffs, the first of the year 1878 in February or March, or perhaps January, and informed him that he, witness, was not a member of the firm of Ayers & Co.    That after the dissolution he sold the goods to Smith and took a mortgage to secure payment—witness resided in Newton county, was frequently at Conyers looking after his real estate and visiting his only daughter who lived there, and in 1878, his granddaughter, Mrs. Jennie Sweet lived in Conyers—he never did any trading with plaintiffs nor did the firm.    On the dissolution in January, 1878, witness and Ayers divided the profits.    The goods fell to witness, as he had furnished the capital.    He loaned money to Ayers & Smith to buy goods at divers times; he informed Carroll, by the general tenor of conversation, of his withdrawal from the firm. He had no connection with the firm after the sixteenth day of January, 1878, and Carroll admitted the fact.

Witness also stated he had never published any final notice of his dissolution with Ayers.

Lucien Smith testified that he and Ayers formed a partnership on the sixteenth day of January, 1878, in Conyers, Georgia, and carried on business there at the same place that Ayers & Co. had used previously ; witness bought out Richards and gave his note, and after that Richards had no connection in any way with Ayers & Co.    Witness is a brother of Mrs. Butler, and did business for plaintiffs in 1876, down to May 1st, 1878, when he came to Conyers to do business, and remained in partnership with Ayers till first of the year 1879.    He told one of the plaintiffs that he was going to be one of the firm of Ayers & Co., had bought out Richards' interest—and from what he told

the plaintiffs they knew that Richards was out of the firm, and that witness had taken his place; also produced the card published in the Conyers *Examiner*, showing the advertisement of the firm of Ayers & Co., with the names of Ayers & Smith on the same.

The *Examiner* was a paper published in Conyers, with considerable circulation in and out of the county of Rockdale—plaintiffs did business in the city of Atlanta—the new firm was insolvent and failed the first of 1879, and stopped business.

Carroll denied that he or the firm had any notice of the withdrawal of Richards from the firm of Ayers & Co.—he had no knowledge of his withdrawal until the present troubles about collecting their money—also that Smith never so told him or the firm, but on the contrary, said he was going into business with Ayers & Richards.

Neither Ayers nor Smith had any property. Richards was a man of money, and they sold the goods on the faith of Richards' pecuniary responsibility.

The court charged the jury upon the facts, that if a part of the account was a consignment to Ayers & Co. at the time Richards was a partner of the firm, and the defendants have not paid for the goods so consigned, and a reasonable time has elapsed to dispose of the goods, and no offer or tender has been made to return said goods to the consignors, and if you believe said firm is insolvent and ceased business, the defendants are liable if demand for payment has been made for the market value of said goods with interest.

The court further charged, that if Richards was at any time in 1877, a member of the firm of Ayers & Co., then the law will presume that partnership to continue until a dissolution is shown, with notice thereof. According to the rules of law, a partnership may be dissolved by mutual consent, but such dissolution does not affect the world or creditors, unless the parties do something more. If Richards was a member of the firm of Ayers & Co.,

and so known to plaintiffs, and during the admitted continuance of the partnership, said firm had' dealings with these plaintiffs, then, whenever said firm dissolved, it was the duty of said firm or a member thereof to give notice of such dissolution to those with whom they had previous dealings—and if upon failure to give notice, and plaintiffs not knowing that Richards had withdrawn, sold goods to said Ayers & Co. on the faith that he, Richards, was still a member, then Richards would be liable as a partner to plaintiffs.

A mere notice in the Conyers *Examiner*, without more, would not be sufficient.

The errors complained of here are to the foregoing charges, and the decision of the court below in refusing the new trial asked, must be controlled by the questions presented in the aforesaid charges.

1. We think the court erred in the charge as to the consigned goods. After a careful examination of the evidence in this record, we are not able to find evidence that a demand was made upon the defendants, Ayers & Co., as composed in the year 1877, when the goods were consigned, nor does it appear that a demand was made upon any person or firm prior to the commencement of the suit, or that the defendants Ayers or Richards made such disposition of said goods as to dispense with a demand. A right of action on the part of the consignor could not exist in the absence of such demand or use before the bringing of the suit.

2. As to the second and main point relied on here, we think the court committed no material error. It is true that a partnership is dissolved by the withdrawal of one of its members or by the introduction of a new partner. In both cases the partnership ceases in all of its characteristics of agency. The withdrawal of a member ends one and the introduction of another creates a new firm, but as to the customers or dealers with the old firm, the mere withdrawal, without more, will not protect the retir-

ing member from liability to a creditor, who had dealt with the firm and who, without notice, had sold goods on the faith of the continued responsibility of the firm.

No such dissolution of a partnership, without notice, would protect the retiring member, especially where the new firm continued the business in the name of the old firm.

What notice is requisite and the manner of giving it, must depend upon the business relations of the creditor and debtor, and the firm name under which the business continues. As to one who had been dealing with the firm, nothing less than actual notice of the withdrawal communicated to the plaintiffs would be sufficient. The publication in a newspaper not shown to circulate in the vicinity of the creditor, or read by him, would not suffice. The creditor must be informed in a reasonable way, and where the retiring partner permits the new firm to carry on the business under the same name, the inference is but fair that, by allowing the use of the same name to be continued, he intends to give the firm with the public the benefit of his responsibility. To the extent, therefore, that these persons were induced to trust the firm on the fact that he was still a member, he ought, upon principles of good faith, to be estopped from denying the fact. His consent to such use of the same name was, in effect, a continuing representation to those ignorant of the dissolution, that the firm was the same.

Whether the notice was sufficient, and apprised the plaintiffs of the withdrawal from the firm, was a question of fact to be passed upon the jury.

3. The evidence was conflicting, and the court committed no error in refusing the new trial on that ground.

Judgment of the court reversed, unless the plaintiffs in the court below will write off the amount of the consigned goods with the interest thereon, and in that event the judgment is affirmed.

See 26 Ohio, 589; 1 Parsons on Part., 412.

Judgment reversed on terms.