### FALLIGANT, guardian, *v.* BARROW, administrator, *et al.*

Where a testator, having a wife and one child, by his will left one half of his estate to his wife during her life or widowhood, and left to his child the residue of his property except such estate for life or widowhood, the widow was entitled to her dower regardless of the devises of the will. But she could not, by electing to take a child's part in lieu of dower, entitle herself to one half of the real estate of her husband in fee simple, notwithstanding the devises in the will.

Argued January 13, — Decided July 1, — Rehearing denied July 20, 1909.

Petition for direction, etc. Before Judge Charlton. Chatham superior court. July 17, 1908.

*John S. Schley, Raiford Falligant,* and *Thomas P. Ravenel,* for plaintiff in error. *Anderson & Cann,* contra.

BECK, J. Joseph N. Guerard died testate. By his will he devised and bequeathed to his wife for and during her natural life, or until she should marry again, a one-half interest in all the property, real, personal, and mixed, of which he might· die possessed. After her death or marriage the said one-half interest was to revert to and become a part of his estate. The residue of his estate was devised and bequeathed to his infant daughter, and, in case of her death without children or descendants of children, it was provided that the property should go to the brothers and sisters of the testator. The widow of the testator elected to take a child's part in lieu of dower. She contended that under such election she was entitled to have one half of the real estate of the testator delivered to her in fee simple. The administrator with the will annexed, being in doubt as to whether she was entitled to have this claim sustained notwithstanding the will, filed his equitable petition for direction. The presiding judge held, that, regardless of the devises in the will, the widow was entitled to have one half of the real estate in fee simple as a child's part in lieu of dower. To this judgment exception was taken.

In 1804 an act was passed which provided, that "When any person holding real or personal estate shall depart this life intestate, the said estate, real and personal, shall be considered as altogether of the same nature and upon the same footing, so that in case of there being a widow and child, or children, they shall draw equal shares thereof, unless the widow shall prefer her dower, in which event she shall have nothing further out of the real estate than such dower; but shall nevertheless receive a child's part or share out of the personal estate." Cobb's Digest, 291. It will be observed that the right of election there given was only in reference to cases of intestacy, and had no application to property which was devised by will. It might be that it would apply to property touching which there was an intestacy, although a part of the estate might be disposed of by will. But as to property which was devised it did not take effect. In 1807 an act was passed, which provided that "It shall be the duty of all widows, within one

year after the death of their husbands, to make their election or
portion out of the estate of the deceased; and any such widow so
failing to make her election shall be considered as having taken
her dower or thirds, and shall forever after be debarred from
taking any other part or portion of the said estate." Cobb's Dig.
227-228. It will be observed that this fixed a limitation within
which the widow's right of election could be made, confining her
to one year from the date of her husband's death. It referred to
"their election or portion out of the estate of the deceased," but
did not affirmatively confer upon her any right to take a portion
greater than that which had already been conferred upon her by
law where there was a will. In 1828 an act was passed which de-
clared that in every case the executor or administrator with the
will annexed shall be entitled to administer the entire estate, al-
though any portion thereof may be undevised, holding the resid-
uum, after payments of debts and legacies, for distribution
according to the laws of this State. Cobb's Dig. 327; Civil Code,
§ 3313; *Knowles* v. *Knowles*, 132 *Ga.* 806 (65 S. E. 128). It was
declared in *Lamar* v. *Gardner*, 113 *Ga.* 781, 785 (39 S. E. 498),
that this made an innovation in the preceding law, and, instead of
having letters testamentary granted as to the estate covered by the
will, and letters of administration granted as to that portion of the
estate touching which there was an intestacy, the grant of the let-
ters included the right to administer the entire estate. In 1841 the
legislature adopted another act on the subject. The first section
of that act did not undertake to modify the preceding law as to the
estate in which a widow could claim a child's part, or to confer upon
her any right to a child's part (or widow's portion) which did not
already exist. It only undertook to change the date from which
the time should begin to run against the widow within which she
was required to make her election. It conferred on her no right
of election different from that which already existed. Doubtless,
from delays in applying for or obtaining letters of administration
or probating wills, widows had frequently been compelled to make
their election in the dark and before they had a sufficient oppor-
tunity to acquaint themselves with the status of the estate. The
legislature, therefore, determined to fix a new point from which time
would begin to run against her. If the act had provided alone
that time should begin to run against her from the grant of letters

of administration, one case would have been left entirely unprovided for, namely, that covered by the act of 1828, where letters testamentary authorized the administration of undevised property. Hence, if, in describing the point from which time should begin to run against the widow, limiting the period of her election, the words "letters of administration" alone had been used, and a case had arisen where a portion of an estate, perhaps only a small portion, had been devised, leaving far the greater part undevised, and where letters testamentary had been granted, which, however, authorized the administration of both the devised and undevised estate, this act would not, in its strict terms, have had any application. In order to cover the entire ground, therefore, it was necessary to provide for cases in which the grant of letters testamentary, covering the right to administer undevised property (and not technically letters of administration), should be granted. Hence the legislature provided that so much of the former act should be repealed as required all widows, within one year after the death of their husbands, to make their election or portion out of the estate of the deceased, and in lieu thereof declared that "It shall be the duty of every widow, within one year after letters testamentary or of administration have been granted on their husband's estate, to make their election or portion out of the estate of the deceased, and, failing so to do, shall be subject to the disability in the above-recited act specified." Acts of 1841, p. 138. Here again she was not given the right to elect to take any greater portion or part of her husband's estate devised by will than she could previously have elected to take, but the time within which she must make her election was changed. In *Beavors* v. *Winn,* 9 *Ga.* 189, 193, it was said: "The act of 1841 does not change this act of 1807, except simply to make the year, within which she is required to elect, to commence from the granting of letters testamentary, or of administration, instead of from the death of the husband." It will thus be perceived that neither the act of 1807 nor that of 1841 changed the fact that the election to take a child's part had reference to property as to which there was an intestacy, as stated in the act of 1804, or gave her a right to take something from her husband's estate entirely different from that which she could have taken without the election. A child has no absolute right to a part of his father's estate which his father has devised

by will. Children can not claim to have shares in their father's estate which he has conveyed away by deed or will. Relatively to . the portion or share which the widow could take, she does not stand in any better position than the children, except that her share will not be less than one fifth. The expression "child's part" arises out of the rules of inheritance, and not from any arbitrary right which a widow or child has to take a share of a testator's property regardless of his will. The Civil Code, §3355, provides: "The following rules shall determine who are the heirs at law of a deceased person. If there are children, or those representing deceased children, the wife shall have a child's part, unless the shares exceed five in number, in which case the wife shall have one fifth part of the estate. If the wife elects to take her dower, she has no further interest in the realty." Those who take under a will take as purchasers, not by descent. The Civil Code, §3258, declares that "A testator by his will may make any disposition of his property not inconsistent with the laws or contrary to the policy of the State; he may bequeath his entire estate to strangers, to the exclusion of his wife and children," etc. If the contention of the defendant in error were correct, a testator would have no such power as that here expressly declared. If he should devise a portion of his estate to his wife and child, and another portion to other relatives or to strangers, the wife, according to the contention here made, could show that she elected to take a child's part, construe this to mean one half of the real estate of her deceased husband (if there were but one child), upset the entire testamentary scheme, and require all the devises which he had made to yield to this arbitrary claim of a child's part. Unless there is some express provision in the law which would have this effect, the power of a testator to dispose of his property would not be construed to have been substantially affected by unnecessary implication. The wife's right to have dower assigned to her from the real estate of her deceased husband, regardless of any will which he may have made, is an express right which has been conferred by law, and which will be construed in connection with the power of a testator to dispose of his property by will, to which reference has already been made. Civil Code, §4687. The argument in favor of the contention of the defendant in error rests in part upon paragraph 3 of section 4689 of the Civil Code. Under the general head, "Dower may be

barred," this paragraph states: "By the election of the widow, within twelve months from the grant of letters testamentary or of administration on the husband's estate, to take a child's part 'of the real estate in lieu of dower." The contention is, that the expression, "within twelve months from the grant of letters testamentary or of administration," covers both cases; that letters testamentary are granted where there is a will; that therefore the election of the widow applies as well in cases where there is a will as where there is none; and that otherwise the words "letters testamentary" are without meaning. It is of course a well-known rule of statutory construction that all the words of a statute are to be given due weight and meaning; and if the words "letters testamentary" could have no meaning except that contended for by defendant in error, that would be an argument in favor of such construction. But we have shown from the history of the law bearing on that subject that they can have a meaning and due application relatively to the point of time within twelve months from which the widow must make her election to take a child's part, without construing them to confer on her a right to something which she did not have, and without practically destroying the right of a testator to dispose of his property by devise. By giving these words the construction above indicated as correct, there is no want of harmony in the law. By giving them any other construction, there is an absolute conflict in the law. We are of the opinion that our learned brother of the trial bench erred in his construction of the law on this subject; and his judgment is therefore      *Reversed. All the Justices concur.*