In re William J. MURPHY, d/b/a Four Wheelers, Debtor.

RETREADING EQUIPMENT, INC., Plaintiff,

v.

William J. MURPHY, d/b/a Four Wheelers, Defendant.

Bankruptcy No. 80–0506A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Aug. 11, 1980.

Thomas Stamps, Macey & Zusmann, Atlanta, Ga., for plaintiff.

Mark A. Kelley, Carr, Abney, Tabb & Schultz, Atlanta, Ga., for trustee.

## ORDER AND MEMORANDUM

W. H. DRAKE, Jr., Bankruptcy Judge.

The above-named debtor filed a proposed plan under Chapter 13 of the Bankruptcy Code on October 12, 1979, and thereafter converted this Chapter 13 case to a Chapter 7 case on or about April 24, 1980. On June 19, 1980, the plaintiff herein filed a complaint for relief from the automatic stay, seeking authorization to take possession of certain retreading equipment in which the plaintiff claims a perfected security interest. On July 2, 1980, by consent of the parties, the trustee in bankruptcy in the above-styled case was joined as a party defendant in this adversary proceeding. On July 3, 1980, the trustee filed an answer to the complaint denying that the plaintiff had any interest in the subject property.

On July 7, 1980, the trustee filed a motion seeking an order transferring the alleged lien of the plaintiff to the proceeds of the sale of the retreading equipment or, in the alternative declaring the alleged lien to be void. On July 8, 1980, the debtor filed a motion requesting that he be dismissed as a defendant in this case. On July 10, 1980, the plaintiff's complaint and the motions of the trustee and of the debtor were heard by this Court. The debtor was dismissed as a party by oral order, the Court ordered briefs to be submitted on the issues raised by the trustee's motion and the complaint, and the hearing was continued until July 22, 1980.

On July 18, 1980, the plaintiff and the trustee each filed a brief. The plaintiff's brief stated that the following were the questions presented:

"1. Is the Plaintiff entitled to a lifting of the automatic stay pursuant to § 362 of the Bankruptcy Code?

2. Is the Trustee barred from raising in this action an attack on the validity of the Plaintiff's security interest because of the confirmation of the Chapter 13 Plan?

3. Does the Plaintiff have a perfected security interest in the equipment which is the subject of Plaintiff's Complaint?

(a) Was Four Wheelers a partnership?

(b) Was Four Wheelers a 'business entity not an individual?'" Plaintiff's Brief p. 5.

On July 22, 1980, the hearing was resumed, and the matters put in issue by the plaintiff's complaint and the trustee's motion were taken under advisement.

On July 30, 1980, the trustee filed a "Motion to Open the Record for the Admission of New Evidence." The Court finds that the evidence sought to be introduced, as described by the motion and brief, even if taken as true, could not affect the result of this case and, therefore, denied said motion.

## FINDINGS OF FACT

### 1.

At all times relevant herein the defendant William J. Murphy has resided at 2864 Bright Star Road, Douglasville, Douglas County, Georgia. T-8.

### 2.

The defendant and Mr. Charles F. Hanna, Jr., discussed the possibility of operating a business as a partnership. T-8.

### 3.

On March 14, 1977, the defendant and Mr. Hanna ordered certain equipment under the firm name of "Four Wheelers." Plaintiff's Exhibits B1, B2, B3, B4, B5, B6.

### 4.

On March 19, 1977, a second order was made under the firm name of "Four Wheelers" and signed by the defendant alone.

**5.**

On March 21, 1977, Mr. Hanna and the debtor sent to the plaintiff a check for $7,000 intended as a 10% down payment on an equipment purchase. Plaintiff's Exhibits E–1, E–2.

**6.**

Mr. Hanna made no contribution to the $7,000 down payment. T–9.

**7.**

Prior to the delivery of the equipment, Mr. Hanna decided not to enter the proposed partnership and made his decision known to the plaintiff. T–10.

**8.**

The defendant confirmed by letter to the plaintiff dated April 11, 1977 the fact that Mr. Hanna was not his partner but that the plaintiff was desirous of completing the purchase transaction in question. Defendant's Exhibit B.

**9.**

The first order of equipment was delivered in May or June of 1977. T–12; Brief in Support of Plaintiff's Complaint, p. 4.

**10.**

On July 13, 1977, plaintiff and defendant entered into a security agreement concerning the equipment in question. Defendant's Exhibit C; Plaintiff's Exhibit B.

**11.**

A UCC–1 Financing Statement concerning this security agreement was filed on July 15, 1977 in the Superior Court of Cobb County, Georgia. Plaintiff's Exhibit D.

**12.**

Between June and August of 1977, one-half of the equipment ordered on March 19, 1977 was delivered. Plaintiff's Brief, p. 4.

**13.**

On February 9, 1978, the parties executed a security agreement covering the second order of equipment. Plaintiff's Brief, p. 4; Defendant's Exhibit E.

**14.**

On February 17, 1978, the plaintiff filed a second UCC–1 Financing Statement covering the second order of equipment with the Clerk of the Superior Court of Cobb County, Georgia. Plaintiff's Exhibit B; Defendant's Exhibit F.

**15.**

A partnership existed during the relevant time between Mr. Murphy and a Mr. Massingale for the purpose of buying and selling a single line of goods.

**16.**

The business of Four Wheelers was not within the scope of the Murphy-Massingale partnership.

## CONCLUSIONS OF LAW

The plaintiff herein seeks the lifting of the automatic stay to allow it to repossess certain equipment which is in the possession of the trustee. The trustee, on the other hand, asserts that any interest the plaintiff may have in the equipment is subordinate to the interest of the estate by virtue of the "strong arm clause" of 11 U.S.C. § 544. The plaintiff retorts that the issue raised by the trustee, i. e., perfection of plaintiff's security interest, has been previously decided by this Court in the context of the confirmation of a Chapter 13 plan at a hearing on December 4, 1979. The plaintiff further contends that even if the issue has not been previously resolved, that the security interest of the plaintiff is perfected.

The first question which must be addressed is whether the issue of the perfection of the plaintiff's security interest has been previously resolved by the confirmation of a Chapter 13 plan. The Court finds that it has not. The fact that the Court approved an uncontested plan under Chapter 13 does not create a "law of the case" situation inasmuch as the matter now presented was not previously contested. See 1B *Moore's Federal Practice* ¶ 0.404[1] pp. 403, 404. Even if the issue had been previously determined, which it has not, the Court retains the power to reconsider any of its own orders. *In re Pottasch Bros. Co. Inc.*, 79 F.2d 613 (2d Cir. 1935); *Castaner v. Mora*, 234 F.2d 710 (1st Cir. 1956). Clearly, the fact that the issue has never been heard is ground for reconsideration and, there-

fore, the plaintiff's "law of the case" argument will not bind this Court.

█ This determination leads to the decisive issue in this case, i. e., whether or not the plaintiff had a perfected security interest in the subject equipment. If the plaintiff's security interest were perfected, then the Court would be required to determine whether the automatic stay should be lifted. However, the plaintiff's security interest is not perfected and, therefore, the plaintiff's claim is subordinate to that of the trustee. 11 U.S.C. § 544.

The plaintiff's security interest is subordinate to the interest of the trustee because it was not perfected as required by Georgia law. Ga. Code § 109A-9-401(1)(b). That statute states in material part:

"(1) The proper place to file in order to perfect a security interest is as follows:

. . . . .

(b) . . . in the office of the clerk of the superior court as follows: When the debtor is a resident individual, then in the county where he resides; or when the debtor is a partnership, a corporation, other business entity not an individual, or a nonresident individual, then in the county of the debtor's principal place of business in this State . . . ."

The plaintiff makes two arguments in support of its position that its security interest was perfected by filing in the county of the debtor's principal place of business rather than in the county where Mr. Murphy resides. The first argument is that Four Wheelers was a partnership when the UCC-1 Financing Statements were filed. The plaintiff alleges that Mr. Murphy was engaged in one of two possible partnerships and that whichever partnership he was engaged in was doing business as Four Wheelers during the material times.

The first partnership is alleged to have been between Mr. Murphy and Mr. Hanna. The unrebutted testimony of Mr. Murphy is that the proposed partnership with Mr. Hanna "was never consummated." T-8. Further, the evidence shows that the plaintiff was aware of this fact by the middle of April 1977, Defendant's Exhibit B, three months prior to the filing of the first financing statement.

The plaintiff argues that the fact that Mr. Hanna may have been personally liable on the first order of equipment creates a partnership for purposes of the filing of a financing statement. However, the issues involved in determining contractual liability (or transactional liability of any type) are far different from those involved in determining whether a particular financing statement gives sufficient notice to subsequent purchasers to perfect a security interest. *In re Firth*, 363 F.Supp. 369 (M.D.Ga. 1973); *In re Eady, Goger v. United States of America, et al.*, 4 B.R. 1, (Bkrptcy., N.D. Ga. 1980) (Drake, B. J.), reported in part, 28 U.C.C.Rep. 1528 (1980). To state that a subsequent purchaser from Mr. Murphy searching the files of the Clerk of the Court of Douglas County would be unlikely to find a UCC-1 financing statement filed in Cobb County is to state the obvious.

Even if some form of constructive partnership were found by Mr. Hanna's liability on the first equipment order, it was clearly dissolved as to the plaintiff by the letter of April 11, 1977. Defendant's Exhibit B. Ga. Code §§ 75-108, 75-109, *Richards v. Butler & Carroll*, 65 Ga. 593 (1880).

The second partnership is alleged to have been between Mr. Murphy and Mr. Massingale. This partnership involved the purchase and sale of a certain line of goods known as the "After Products", T-16, 17, the "After Acquired Products", T-21, 22, or the "After Market Products", T-22, 23. This line of goods is described as:

"A product line of metal tubing, after market products which we used, bumper guards, roll bars and that sort of thing for pickup trucks." T-22.

Mr. Massingale made an investment of over $7,000 in this line of goods. T-16. Messrs. Murphy and Massingale agreed to split the profits and losses from the sale of that particular line of goods. T-23. However, Mr. Massingale had no other interest in any other aspect of the business. T-23. In Georgia the legal effects of a partnership

are limited to the "legitimate scope of the business of the partnership." Ga. Code § 75–302. The scope of the partnership between Mr. Murphy and Mr. Massingale was the purchase and sale of one line of products. Four Wheelers was a business "engaged in wholesale tires and accessories 85% and retails 15%." Plaintiff's Exhibit G. The evidence clearly indicates that Four Wheelers and the Murphy-Massingale partnership were not the same business. Moreover, the Murphy-Massingale partnership had nothing to do with the tire business or the retreading equipment purchased by Four Wheelers which is the subject of this action.

The Court, finding that no partnership doing business as Four Wheelers was in existence at the time that the financing statements were filed, finds that plaintiff's first argument must fall.

The plaintiff also argues that Four Wheelers is an "other business entity not an individual" and for this reason the filing in Cobb County was proper.

Research reveals no Georgia cases defining an "other business entity, not an individual." The language is a non-uniform adaptation of the Uniform Commercial Code. *See In re Carmichael Enterprises, Inc.,* 9 U.C.C.Rep. 990 (N.D.Ga. 1971). Since it is non-uniform, and has been adopted in no other jurisdiction, the cases of other jurisdiction are of little assistance.[1] Thus, it appears to be a question of first impression.

However, this does not make the interpretation of the statute an unduly difficult matter. To find an individual proprietorship to be an "other business entity, not an individual" would be to give no meaning to the words "not an individual." This would be improper. *Falligant v. Barrow,* 133 Ga. 87, 65 S.E. 149 (1909). There is clearly scope for the operation of the words "other business entity" (e. g. trust, joint venture) without depriving the words "not an indi-

vidual" of their meaning. The apparent intent of the words "not an individual" is to differentiate individual proprietorships from "other business entities."

This interpretation leads to the conclusion that the plaintiff's security interest is not properly perfected since the financing statement was not filed in the county of the debtor's residence, i. e., Douglas County. Since the plaintiff's security interest is not perfected, it is subordinate to the interest of the trustee as a judicial lien creditor. 11 U.S.C. § 544(a)(1).

Therefore, it is ORDERED and ADJUDGED that the trustee's motion to reopen the record shall be and is denied.

It is FURTHER ORDERED and ADJUDGED that the plaintiff's complaint to lift the automatic stay shall be and is denied and the defendant's motion to avoid the plaintiff's lien shall be and is granted.

1. However, it should be noted that a retail store operated by a husband and wife, *In re Eichler,* 9 U.C.C.Rep. 1400 (E.D.Wis. 1971), and an individual proprietorship, *In re Le Mieux,* 13 U.C.C.

Rep. 559 (D.Minn. 1973), have been found not be be included within the term "organizations" within the meaning of U.C.C. § 1–201[28].