S03G1102. THURMAN et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.

(598 SE2d 448)

BENHAM, Justice.

Gail Thurman, a postal carrier for the United States Postal Service, was injured on the job when her postal truck was struck by a vehicle driven by appellee Mamie Brown. After filing suit against Brown for more than Brown's insurance policy limits of $100,000, Thurman and her husband settled with Brown for $95,554.19, Brown's policy limits reduced by the amount paid to the U.S.P.S. for damage to the postal truck ($4,445.81). Because Thurman had received payments for lost wages and medical expenses from her employer's workers' compensation carrier pursuant to the Federal Employees Compensation Act, 5 USCA § 8101 et seq., and from her employer's group medical insurance carrier pursuant to the Federal Employees Health Benefits Act, 5 USCA § 8901 et seq., those two carriers claimed subrogation rights from the proceeds of the settlement with Brown. Since "no court . . . [or] . . . attorney shall pay or distribute to the beneficiary the proceeds of such suit or settlement without first satisfying or assuring the satisfaction of the interest of the United States" (5 USCA § 8132), Brown's liability insurance carrier issued three checks: one to the Thurmans, one to Thurman and the workers' compensation carrier as co-payees, and one to Thurman and the group medical insurance carrier as co-payees. As a result, the workers' compensation carrier and the medical insurance carrier received $34,666.32 from Brown's insurer and the Thurmans received $60,887.87.

The Thurmans then turned to their uninsured motorist (UM) carrier, appellee State Farm Mutual Automobile Insurance Company, contending tortfeasor Brown was underinsured since their $75,000 UM State Farm coverage exceeded the net proceeds ($60,887.87) they had received from Brown's liability carrier. The trial court granted summary judgment to State Farm, and the Court of Appeals affirmed. *Thurman v. State Farm Mut. Auto. Ins. Co.*, 260 Ga. App. 338 (579 SE2d 746) (2003). We granted the Thurmans's petition for a writ of certiorari, asking the parties to address whether "funds from an insurance policy that are used to cover the subrogation claims of the federal government, as claimant's employer, [are] counted in the calculation of 'available coverages' for purposes of the Georgia Uninsured Motorists Statute, OCGA § 33-7-11 et seq.?"

Uninsured motorist coverage can be triggered by the involvement in the incident of an underinsured motor vehicle. OCGA § 33-7-11 (b) (1) (D) (ii) defines an uninsured motor vehicle as one where the tortfeasor has liability insurance but the "available coverages" are "less than the limits of the uninsured motorist coverage provided under the insured's insurance policy. . . ." The statute goes on to define "available coverages" as "the limits of coverage [of the tortfeasor's liability insurance] less any amounts by which the maximum amounts payable under such limits of coverage have, *by reason of payment of other claims or otherwise*, been reduced below the limits of coverage." Id. (Emphasis supplied.) The issue for determination is whether the subrogation payments made by the tortfeasor's liability insurer pursuant to 5 USCA § 8132 to the workers' compensation carrier and pursuant to the contractual provision of the group medical insurance carrier which provided benefits to the injured federal employee constituted "payment of other claims or otherwise," thereby reducing the amount of available coverage under tortfeasor Brown's insurance policy to less than the amount of UM coverage the Thurmans had with State Farm.

In its opinion, the Court of Appeals construed "other claims" to be claims by persons suffering injury in the same collision, other than the person seeking to recover UM benefits. The appellate court determined the two subrogation payments did not constitute "payments of other claims" because the subrogation payees were not "other" claimants since they stood in Thurman's shoes with respect to the liability insurance proceeds. 260 Ga. App. at 339-340. Having resolved the meaning of "other claims," the Court of Appeals did not discuss the "or otherwise" segment of the definition of "available coverages."

Though the Court of Appeals made a valiant and commendable effort to resolve this dispute, its resolution of this case is troubling in light of Georgia's public policy strongly supportive of the complete

compensation rule: an insurer is prohibited from obtaining reimbursement for amounts paid under medical payments coverage unless and until the insured has been completely compensated for her loss. OCGA § 33-24-56.1 (b); *Davis v. Kaiser Foundation &c.*, 271 Ga. 508 (521 SE2d 815) (1999). See also *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646 (482 SE2d 325) (1997). The complete compensation rule set forth in OCGA § 33-24-56.1 (b) echoes the statutory limitation placed on the 1992 reinstatement of the subrogation lien in workers' compensation cases — the recovery of the employer or its insurer pursuant to that lien is conditioned upon the injured employee having been "fully and completely compensated . . . for all economic and noneconomic losses incurred as a result of the injury." OCGA § 34-9-11.1 (b). Consequently, when Georgia law is applicable, an injured party's medical insurer and the workers' compensation carrier of the injured party's employer are not permitted to seek reimbursement from the injured party unless and until the amount of the settlement received by or the judgment awarded to the injured party exceeds the injured party's economic and noneconomic damages.

However, due to Mrs. Thurman having been injured on the job and her status as an "employee of an instrumentality wholly owned by the United States . . ." (5 USCA § 8101 (1) (A)), and as an employee for purposes of FEHBA (5 USCA § 8901 (1)), her health and workers' compensation benefits are governed by federal law. FEHBA states "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 USCA § 8902 (m) (1). In contrast to Georgia's public policy of complete compensation, the purpose of FECA's provision of reimbursement upon the insured's receipt of insurance proceeds from the tortfeasor (5 USCA § 8132) is "to minimize the cost of the FECA program to the Federal Government. [Cits.]" *United States v. Lorenzetti*, 467 U. S. 167, 177 (104 SC 2284, 81 LE2d 134) (1984). Thus, under these federal provisions, the medical benefits insurer and the workers' compensation insurer had subrogation liens and were able to enforce them upon the injured party's receipt of a settlement from the liable third party, regardless of Georgia's requirement that such action be preceded by a determination that the injured person had been fully compensated. *Lorenzetti* at 173-174 ("Section 8132 imposes only two conditions precedent to an employee's obligation to 'refund . . . the amount of compensation paid by the United States.' The first is that the employee must have suffered an injury or death under circumstances creating a legal liability in a third party to pay damages. The second is that the employee or his beneficiaries must have received

money or other property in satisfaction of that liability."). See *Medcenters Health Care v. Ochs*, 26 F3d 865 (8th Cir. 1994); *Buatte v. Gencare Health Systems*, 939 SW2d 440 (Mo. App. 1996); *NALC Health Benefit Plan v. Lunsford*, 879 FSupp. 760 (E.D. Mich. 1995) (the provisions of a medical benefits policy issued pursuant to FEHBA preempt inconsistent state law).

While Georgia law cannot bar the federal government and its insurance carriers from obtaining reimbursement from the federal worker injured in a motor vehicle collision on the job for benefits paid to her regardless of whether she has been fully compensated for the injuries sustained, Georgia law can mitigate the financial harm inflicted by the federal policy and effectuate, as best it can under the circumstances, Georgia's public policy of complete compensation. The legislature has provided the means by its use of the phrase "reduced by payment of claims or otherwise" to describe payments that reduce the amount of "available coverages" under the tortfeasor's liability policy. Accordingly, we conclude that when a federal employee is required by FECA or FEHBA to reimburse the provider of benefits and the federal employee has not been fully compensated for injuries sustained, the amount reimbursed to the benefits providers constitutes a reduction in the "limits of coverage [of the tortfeasor's liability insurance] . . . by reason of . . . or otherwise." See *Sibley v. Detroit Automobile Inter-Ins. Exch.*, 427 NW2d 528, 531 (Mich. 1988) (Michigan Supreme Court construed a provision of its automobile no-fault law to temper the effect of the federal preemption and to effectuate the policies underlying the preempted state law). Accordingly, the vehicle driven by the tortfeasor qualifies under OCGA § 33-7-11 (b) (1) (D) (ii) as an uninsured vehicle since the "available coverages," i.e., the tortfeasor's policy limits ($100,000) reduced by other claims paid ($4,445.81) or otherwise ($34,666.32) is $60,887.87, which is $14,112.13 less than Brown's $75,000 UM coverage. Consequently, the Court of Appeals erred in affirming the trial court's grant of summary judgment to Brown's UM carrier.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 7, 2004 —
RECONSIDERATION DENIED JULY 12, 2004.

*Jerry B. Hatcher*, for appellants.
*Sharon W. Ware & Associates, Ambadas B. Joshi, McLain & Merritt, William S. Sutton*, for appellees.