A08A0529. TOOMER v. ALLSTATE INSURANCE COMPANY.
(663 SE2d 763)

JOHNSON, Presiding Judge.

Janie Toomer sued Edgar Rosenberry for injuries she suffered in an automobile collision that allegedly was his fault. She served her uninsured motorist ("UM") carrier, Allstate Insurance Company, with the complaint. Toomer later settled with Rosenberry's liability insurance carrier, USAA, for the amount of his policy limit. Allstate moved to dismiss, arguing that Toomer's UM policy limit was equal

to Rosenberry's liability policy limit, and the trial court granted Allstate's motion. Toomer contends that the court erred because the proceeds of her settlement with USAA will be reduced by the amount of a Medicare lien. We agree with Toomer and reverse.

Allstate's motion to dismiss was based on the general rule that the proper way to determine UM exposure is to subtract the total liability coverage available to the injured party from the total UM coverage.[1] Because Toomer's UM policy limit was the same as Rosenberry's liability policy unit, Allstate argued that it had no UM exposure. Toomer responded that Medicare had paid approximately $8,600 of her collision-related medical bills and was now asserting a lien against her settlement with USAA to recover those payments. Citing our supreme court's decision in *Thurman v. State Farm Mut. Auto. Ins. Co.*,[2] Toomer argued that Rosenberry was underinsured by the amount of the Medicare lien and that she should be able to recover that amount under her UM policy with Allstate. The trial court, however, concluded that *Thurman* did not apply.

In *Thurman*, Gail Thurman, a United States Postal Service ("USPS") postal carrier, was injured when a vehicle driven by Mamie Brown struck her postal truck. Thurman received medical and income benefits from USPS's workers' compensation and group medical insurance carriers. Thurman and her husband later sued Brown and settled with Brown's liability insurance carrier for approximately $96,000. USPS's insurance carriers asserted subrogation rights from the proceeds of the settlement, so the Thurmans ultimately received only about $61,000. They then sued their UM carrier, State Farm Mutual Automobile Insurance Company, arguing that Brown was underinsured because their $75,000 UM policy exceeded the net proceeds of their settlement with Brown's liability carrier. The trial court awarded summary judgment to State Farm and we affirmed.[3]

The supreme court, however, reversed.[4] It began by noting that UM coverage may be triggered when a vehicle involved in a collision is underinsured. Under OCGA § 33-7-11 (b) (1) (D) (ii), an uninsured motor vehicle is one in which the tortfeasor has liability insurance but the "available coverages" are "less than the limits of the uninsured motorist coverage provided under the insured's insurance policy. . . ." The statute defines "available coverages" as

---

[1] See OCGA § 33-7-11 (b) (1) (D) (ii); *Dewberry v. State Farm Ins. Co.*, 197 Ga. App. 248, 249 (398 SE2d 266) (1990); *Sanborn v. Farley*, 192 Ga. App. 376 (385 SE2d 6) (1989).

[2] 278 Ga. 162 (598 SE2d 448) (2004).

[3] See *Thurman v. State Farm Mut. Auto. Ins. Co.*, 260 Ga. App. 338 (579 SE2d 746) (2003).

[4] *Thurman*, supra, 278 Ga. 162.

the limits of coverage [of the tortfeasor's liability insurance] less any amounts by which the maximum amounts payable under such limits of coverage have, *by reason of payment of other claims or otherwise*, been reduced below the limits of coverage.[5]

The supreme court concluded that the "available coverages" under Brown's liability policy had been reduced by the amount that Thurman had been required, under federal law, to reimburse the USPS's insurance carriers.[6] Accordingly, State Farm had UM exposure.[7]

In reaching this result, the supreme court cited Georgia's "complete compensation rule," under which an injured party's medical insurer and the workers' compensation carrier of the injured party's employer may not seek reimbursement from the injured party "unless and until the amount of the settlement received by or the judgment awarded to the injured party exceeds the injured party's economic and noneconomic losses."[8] The court noted that there was no equivalent federal rule. Rather, the Federal Employees Compensation Act ("FECA")[9] and Federal Employees Health Benefits Act ("FEHBA")[10] provided that the medical benefits and workers' compensation insurers "had subrogation liens and were able to enforce them upon the injured party's receipt of a settlement from the liable third party," despite Georgia's requirement that the injured party first be fully compensated.[11] Although Georgia courts cannot abrogate federal law, the supreme court reasoned, they can "mitigate the financial harm inflicted by the federal policy and effectuate . . . Georgia's public policy of complete compensation."[12]

In this case, Medicare seeks reimbursement from Toomer's settlement with USAA for the medical expenses it paid related to her collision. Under federal law, Medicare may pay an eligible injured party's medical expenses when payment from an applicable automobile insurance policy is not expected promptly.[13] Any such payment by Medicare, however, "shall be conditioned on reimbursement to

---

[5] (Emphasis supplied.) OCGA § 33-7-11 (b) (1) (D) (ii).

[6] *Thurman*, supra, 278 Ga. at 165.

[7] Id.

[8] Id. at 164, citing OCGA §§ 33-24-56.1 (b), 34-9-11.1 (b).

[9] 5 USCA § 8101 et seq.

[10] 5 USCA § 8901 et seq.

[11] *Thurman*, supra, 278 Ga. at 164.

[12] Id. at 165.

[13] See 42 USCA § 1395y (b) (2) (B) (i).

the appropriate Trust Fund. . . ."[14] Moreover, Medicare "may initiate recovery as soon as it learns that payment has been made or could be made under . . . any liability or no-fault insurance. . . ."[15] Finally, "[n]o court, insurer, attorney, or other person shall pay or distribute to the beneficiary [of Medicare payments] the proceeds of [any] suit or settlement without first satisfying or assuring satisfaction of the interest of the United States."[16] Thus, federal law obligates Toomer to reimburse Medicare for the collision-related medical payments it made on her behalf.

We find no meaningful distinction between Toomer's situation and that of Gail Thurman. Allstate argues that *Thurman* is distinguishable because in that case, the injured party was a federal employee whose reimbursement obligations arose under FECA and FEHBA, whereas here, the injured party is not a federal employee and her reimbursement obligations arise under Medicare law. Allstate offers no reason why these factual variances matter, and we discern none. In both cases, federal law requires an injured party to repay the provider of benefits, resulting in the party being compensated in an amount less than the party's UM policy limit. And in both cases, Georgia's public policy of complete compensation is furthered by holding that "available coverages" under the UM statute are reduced by reimbursements to federal benefits providers. *Thurman* governs this case, and the trial court erred by holding otherwise.

Allstate also argues that *Thurman* should not apply because there is no evidence that Toomer has actually repaid Medicare. According to Allstate, it is an open question whether, and in what amount, Medicare will ever be repaid; therefore, it is not clear that UM coverage would apply. But Allstate filed a motion to dismiss Toomer's claim, not a motion for summary judgment. A motion to dismiss should be granted only where "the allegations of the complaint, when construed in the light most favorable to the plaintiff with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[17] Whether Medicare has been or will be repaid, and in what amount, are questions of fact that the trial court did not, and could not, resolve on a motion to dismiss.

*Judgment reversed. Barnes, C. J., and Phipps, J., concur.*

---

[14] Id.

[15] 42 CFR § 411.24 (b).

[16] 5 USCA § 8132.

[17] (Punctuation omitted.) *Byrd v. Cavenaugh*, 269 Ga. App. 612 (604 SE2d 655) (2004).

DECIDED JUNE 18, 2008.

*Noble L. Boykin, Jr.*, for appellant.
*Carlock, Copeland, Semler & Stair, Frederick M. Valz III, Ambadas B. Joshi, Julie D. Culhane*, for appellee.
*Kate S. Cook*, amicus curiae.