A08A2315. ADAMS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
(679 SE2d 726)

BARNES, Judge.

This appeal addresses the amount State Farm Mutual Automobile Insurance Company owes in uninsured motorist benefits to Randolph Adams, a State Farm insured who was seriously injured in a car wreck. The facts are undisputed. Adams sued the tortfeasor to recover for injuries sustained in the car wreck. During the course of the underlying litigation, Nationwide Insurance Company, the tortfeasor's automobile liability insurer, made two payments that exhausted its $25,000 policy limits: (1) payment in the amount of $9,217.66 to Grady Hospital to compromise its hospital lien for medical services provided to Adams, and (2) payment in the amount of $15,782.34 to Adams for a limited release.

Adams then sought additional compensation for his injuries under his insurance policy with State Farm, which provided him with $100,000 uninsured motorist coverage. A dispute arose, however, over the amount of State Farm's coverage available. State Farm contended it should be able to set off or take credit for the entire $25,000 that Nationwide paid as its total liability coverage, but Adams contended that State Farm should only get credit for the $15,782.34 paid to him personally, and not the $9,217.66 paid by Nationwide directly to Grady Hospital to satisfy its lien.

After both parties filed motions for summary judgment, the trial court denied Adams' motion and granted State Farm's motion, allowing State Farm credit for the entire $25,000 paid by Nationwide. The trial court found that State Farm was entitled to set off from its $100,000 uninsured motorist coverage the full $25,000 paid from the tortfeasor's liability policy. The court held that Adams' election to voluntarily divert part of the $25,000 liability payment to

Grady Hospital to satisfy his hospital bill did not reduce the available liability coverage below $25,000 or increase his uninsured motorist coverage.

On appeal, Adams contends the trial court erred by granting summary judgment to State Farm and by denying his motion for summary judgment. We agree and thus must reverse the trial court.

1. In Georgia,

> [t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.

(Citations omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307-308 (1) (590 SE2d 260) (2003). Insurance in Georgia is a matter of contract, *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996), and the interpretation of a statute is a question of law for the trial court, which is reviewed de novo on appeal. *Joe Ray Bonding Co. v. State of Ga.*, 284 Ga. App. 687, 688 (644 SE2d 501) (2007).

2. Both parties agree that this case is controlled by OCGA § 33-7-11 (b) (1) (D) (ii), which defines an uninsured motor vehicle as one in which the tortfeasor has liability insurance but the "available coverages" are "less than the limits of the uninsured motorist coverage provided under the insured's insurance policy." We note that this statute was substantially amended in 2008, but those amendments do not apply in this case.

The statute defines "available coverages" as the policy limits "less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage." OCGA § 33-7-11 (b) (1) (D) (ii). The question before us is whether the payment made by the tortfeasor's liability insurer to Grady Hospital to satisfy the hospital lien for services provided to Adams constituted "payment of other claims or otherwise," thereby reducing the "maximum amounts payable under [the] limits of coverage."

A cardinal rule of statutory construction is that "the courts shall look diligently for the intention of the General Assembly." OCGA § 1-3-1 (a). Once the legislative intent is discerned, courts should never construe the language employed in a statute to render the purpose of the General Assembly futile, unenforceable, or ineffectual. See *Bd. of Trustees &c. v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980), overruled in part on other grounds, *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166, 167-168 (2) (598 SE2d 456) (2004). Rather, language must be given a reasonable and sensible interpretation in order to carry out legislative intent. See *Mayor &c., City of Hapeville ·v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). Additionally, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (1) (391 SE2d 5) (1990), and this court will not construe a statute so as to render any portion of it meaningless. *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997). Unless they are words of art, words are given their ordinary signification. OCGA § 1-3-1 (b).

In this case we must determine whether "other claims or otherwise" includes the payment made directly to Grady Hospital. We first note that "[t]he natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things." (Citation and punctuation omitted.) *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996). Thus, "or" otherwise clearly does not limit this phrase to just "other claims." As we must give all the words of a statute due weight and meaning, *Falligant v. Barrow*, 133 Ga. 87, 92 (65 SE 149) (1909), we cannot disregard the word "otherwise." "Otherwise" is defined in The American Heritage Dictionary (3d College ed. 2000) as "[i]n another way; differently; under other circumstances; in other respects; other than supposed; different," and in Black's Law Dictionary (6th ed.) as "[i]n a different manner; in another way, or in other ways."

We find that *Thurman v. State Farm &c. Ins. Co.*, 278 Ga. 162 (598 SE2d 448) (2004), and *Toomer v. Allstate Ins. Co.*, 292 Ga. App. 60 (663 SE2d 763) (2008), control the disposition of this appeal. In *Thurman*, our Supreme Court reversed this court's holding in *Thurman v. State Farm &c. Ins. Co.*, 260 Ga. App. 338 (579 SE2d 746) (2003), that a federal subrogation claim was not an "other claim" as defined in OCGA § 33-7-11 (b) (1) (D) (ii) and held:

> The legislature has provided the means by its use of the phrase "reduced by payment of claims or otherwise" to describe payments that reduce the amount of "available

coverages" under the tortfeasor's liability policy. Accordingly, we conclude that when a federal employee is required by [Federal laws] to reimburse the provider of benefits and the federal employee has not been fully compensated for injuries sustained, the amount reimbursed to the benefits providers constitutes a reduction in the limits of coverage of the tortfeasor's liability insurance by reason of or otherwise.

(Citation and punctuation omitted.) *Thurman v. State Farm &c. Ins. Co.*, supra, 278 Ga. at 165. Thus the Supreme Court found that the vehicle driven by the tortfeasor in *Thurman* qualified under OCGA § 33-7-11 (b) (1) (D) (ii) as an uninsured vehicle because the " 'available coverages,' i.e., the tortfeasor's policy limits" were reduced by other claims paid and "otherwise" by the amounts of the federal subrogation claims, which was less than the amount of available uninsured motorist coverage. Id.

In the same manner, in *Toomer*, this court found that the amount of the available liability coverage was reduced by the amount of a Medicare lien. We held:

We find no meaningful distinction between Toomer's situation and that of Gail Thurman. Allstate argues that *Thurman* is distinguishable because in that case, the injured party was a federal employee whose reimbursement obligations arose under FECA and FEHBA, whereas here, the injured party is not a federal employee and her reimbursement obligations arise under Medicare law. Allstate offers no reason why these factual variances matter, and we discern none. In both cases, federal law requires an injured party to repay the provider of benefits, resulting in the party being compensated in an amount less than the party's UM policy limit. And in both cases, Georgia's public policy of complete compensation is furthered by holding that "available coverages" under the UM statute are reduced by reimbursements to federal benefits providers. *Thurman* governs this case, and the trial court erred by holding otherwise.

*Toomer v. Allstate Ins. Co.*, supra, 292 Ga. App. at 63. Although in this case we are not presented with a lien imposed under federal law, we find no meaningful distinction between the lien in this case imposed under Georgia law and the federal liens in *Toomer v. Allstate Ins. Co.*, supra, and *Thurman v. State Farm &c. Ins. Co.*, supra.

OCGA § 44-14-470 (b) provides that

> [a]ny person, firm, hospital authority, or corporation oper-
> ating a hospital, nursing home, or physician practice or
> providing traumatic burn care medical practice in this state
> shall. have a lien for the reasonable charges for hospital,
> nursing home, physician practice, or traumatic burn care
> medical practice care and treatment of an injured person,
> which lien shall be upon any and all causes of action
> accruing to the person to whom the care was furnished or to
> the legal representative of such person on account of
> injuries giving rise to the causes of action and which
> necessitated the hospital, nursing home, physician practice,
> or provider of traumatic burn care medical practice care,
> subject, however, to any attorney's lien. The lien provided
> for in this subsection is only a lien against such causes of
> action and shall not be a lien against such injured person,
> such legal representative, or any other property or assets of
> such persons and shall not be evidence of such person's
> failure to pay a debt.

The lien is against those liable to pay the patient's damages. *Hosp. Auth. &c. v. Boyd*, 96 Ga. App. 705, 708 (101 SE2d 207) (1957). Moreover, upon a showing that the tortfeasor paid the patient, a hospital may recover directly from the patient. *Dawson v. Hosp. Auth. &c.*, 98 Ga. App. 792, 793-794 (1) (106 SE2d 807) (1958). See also *Thomas v. McClure*, 236 Ga. App. 622, 624 (2) (513 SE2d 43) (1999) (A hospital could enforce its lien against money paid by a patient's uninsured motorist carrier.).

Although the dissent finds that Adams "chose to use $9,217.66 to pay off his hospital bill," the same argument could have applied equally to Toomer and Thurman, as we are aware of no provision in federal law which would have prevented them from paying the amounts giving rise to the federal liens with their own resources. Therefore, the only distinction between the liens in *Thurman* and *Toomer* is that in those cases the liens were imposed under federal law, but in this case the hospital lien was imposed under OCGA § 44-14-470 (b). As we find that this is a distinction without a real difference, this distinction does not warrant treating the two types of liens differently. Pursuant to *Toomer* and *Thurman*, Grady Hospital's lien is an "other claim or otherwise" within the meaning of OCGA § 33-7-11 (b) (1) (D) (ii) and State Farm is not allowed to take credit for the $9,217.66 paid directly to Grady Hospital by the tortfeasor's liability carrier.

Accordingly, we find that the trial court erred by granting summary judgment to State Farm and by denying Adams' motion for

summary judgment. Therefore, the judgment of the trial court is reversed and the case is remanded to the trial court with direction to grant Adams' motion for summary judgment.

*Judgment reversed with direction. Miller, C. J., Ellington and Phipps, JJ., concur. Johnson, P. J., Blackburn, P. J., and Smith, P. J., dissent.*

JOHNSON, Presiding Judge, dissenting.

I agree with the trial court that State Farm was entitled to set off its $100,000 UM coverage by the full $25,000 paid from the tortfeasor's liability policy. I, therefore, respectfully dissent from the majority's position. Adams' election to voluntarily divert part of the $25,000 liability payment to satisfy his hospital bill did not reduce the available liability coverage below $25,000 or increase his UM coverage.

Here, contrary to Adams' assertions, the legislative intent of the UM statute is not to make insureds whole, but "to place insureds in the same position they would be in relation to coverage if the tortfeasors causing the injuries had obtained at least the minimum prescribed liability insurance."[1] The legislative intent of the General Assembly is not served by reducing the amount of "available coverage" by the amount of a hospital bill or lien. If the payment of hospital bills or liens constituted a payment of "other claims or otherwise" such that it reduced limits of available coverage, UM coverage would automatically be increased in every instance where an injured insured receives treatment at a hospital and the hospital receives payment for such treatment under the liability policy. In this case, Adams received $25,000 from the tortfeasor's insurance carrier and chose to use $9,217.66 to pay off his hospital bill. I find no error in the trial court's grant of summary judgment to State Farm.

Adams' argument that *Thurman v. State Farm &c. Ins. Co.*[2] requires a different result is not persuasive. *Thurman* addressed a situation involving federal claims on an injured party's settlement, where reimbursement of the federal claims was mandatory regardless of whether or not the injured party had been fully compensated.[3] The applicable federal statute, 5 USCS § 8132, specifically provides

---

[1] (Punctuation and footnote omitted.) *Crafter v. State Farm Ins. Co.*, 251 Ga. App. 642, 644 (554 SE2d 571) (2001); see also *Young v. Maryland Cas. Co.*, 228 Ga. App. 388, 390 (1) (491 SE2d 839) (1997).

[2] 278 Ga. 162 (598 SE2d 448) (2004).

[3] The purpose of the federal policies' provision of reimbursement upon the insured's receipt of insurance proceeds is to minimize the cost of the federal programs to the federal government, not to ensure that the insured has been fully compensated. *Thurman*, supra at 164.

for mandatory adjustment after recovery from a third party:

> If an injury or death for which compensation is payable under this subchapter [5 USCS § 8101 et seq.] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, **shall refund** to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. No court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States.[4]

The Supreme Court of Georgia noted that the federal policies directly contradicted Georgia law on the issue, and to mitigate the financial harm inflicted by the federal policies, the *Thurman* Court held that the amount reimbursed to the federal benefits providers constituted a reduction in liability coverage.[5] The Supreme Court of Georgia, however, carefully limited *Thurman* to apply only when a federal employee is required by federal law to reimburse benefit providers, resulting in the federal employee not receiving full compensation.[6]

Similarly, *Toomer v. Allstate Ins. Co.*[7] addressed a situation involving the repayment of a federal Medicare lien, where Medicare paid for the collision-related medical payments. In that case, we again noted that federal law specifically required the injured party to repay the provider of benefits without regard to whether the injured party had been fully compensated: "[N]o court, insurer, attorney, or other person shall pay or distribute to the beneficiary of Medicare payments the proceeds of any suit or settlement without first satisfying or assuring satisfaction of the interest of the United States."[8] As in *Thurman*, Georgia's public policy of complete com-

---

[4] (Emphasis supplied.)
[5] Id. at 164-165.
[6] Id.
[7] 292 Ga. App. 60 (663 SE2d 763) (2008).
[8] (Punctuation and footnote omitted.) Id. at 63.

pensation could only be furthered by holding that "available coverages" under the UM statute are reduced by reimbursements to federal benefits providers.

Here, unlike in *Thurman* or *Toomer*, neither federal nor state law required payment to the benefits provider. Although the Georgia hospital lien statute provides that a lien arises upon a cause of action, it does not employ the mandatory payment language contained in the federal laws applicable in *Thurman* and *Toomer*.[9] Thus, Nationwide, with Adams' consent, voluntarily paid a claimant whose repayment was not mandatory. *Thurman* and *Toomer* do not control this case.

I am authorized to state that Presiding Judge Blackburn and Presiding Judge Smith join in this dissent.

DECIDED APRIL 14, 2009 —
RECONSIDERATION DENIED JUNE 9, 2009 —

*Chambers, Aholt & Rickard, Clyde E. Rickard III*, for appellant.
*Carlock, Copeland & Stair, William M. Cheves, Jr., Harper, Waldon & Craig, Kimberly A. McNamara, Russell D. Waldon, Jane N. Wilkes, Ryan A. Johnson, Rodney S. Shockley*, for appellee.
*Robertson, Bodoh & Nasrallah, Mathew G. Nasrallah, Jonah A. Flynn*, amici curiae.

---

[9] OCGA § 44-14-470; compare 5 USCS § 8132.