## A09A0392. FLOYD v. AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY.
### (681 SE2d 216)

DOYLE, Judge.

In a suit for damages arising out of an automobile collision, Donna Floyd appeals from the grant of summary judgment to American International South Insurance Company ("American") in its capacity as her uninsured motorist ("UM") carrier. Specifically, Floyd contends that the trial court erred in concluding that her UM claim was not viable (due to equal coverage under the tortfeasors' policy) because a hospital lien reduced the amount of "available coverages" under OCGA § 33-7-11 (b) (1) (D). Because this case presents nearly identical facts to that in *Adams v. State Farm &c. Ins. Co.*,[1] in which we reversed a grant of summary judgment to the insurer, we likewise reverse in this case.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the undisputed record shows that in November 2005,

---

[1] 298 Ga. App. 249, 250 (2) (679 SE2d 726) (2009).

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Floyd was injured in an automobile collision. Both the driver and the owner of the other vehicle were named insureds under a policy issued by United Automobile Insurance Company, which paid the policy limits of $25,000 to Floyd in exchange for a limited release. In November 2007, Floyd sued the driver and owner seeking additional damages and claiming uninsured motorist coverage with American, which defended the suit under a reservation of rights.[3]

American moved for summary judgment on the ground that Floyd's uninsured motorist policy coverage did not exceed the $25,000 coverage limit of the alleged tortfeasors' policy, which had been paid to Floyd. The trial court granted the motion, and this appeal followed.

The Code section applicable to the policy in question provided as follows:[4]

> "Uninsured motor vehicle" means a motor vehicle . . . as to which there is: . . . Bodily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; and for this purpose available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage *less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.*[5]

Here, the trial court ruled that the other vehicle was not "uninsured" under this definition, because the "difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages . . . and the limits of the uninsured motorist coverage provided under the insured's

---

[3] American also filed a cross-claim against the owner and driver for damages in the event American would be liable to Floyd.

[4] See Ga. L. 2008, p. 1192, §§ 1, 5 (noting that the current version applies to insurance policies issued or renewed on and after January 1, 2009).

[5] (Emphasis supplied.) OCGA § 33-7-11 (b) (1) (D) (ii) (2005).

motor vehicle insurance policy" was zero. This was based on the tortfeasors' policy limit of $25,000 and Floyd's UM policy limit of $25,000.

Floyd now contends that the trial court erred because an outstanding hospital lien reduced the "available coverages" pursuant to the emphasized language above. In light of our recent ruling in *Adams*, we agree. In *Adams*, we addressed a scenario in which part of the proceeds of the tortfeasor's insurance policy were used to pay a hospital lien.[6] We held that this resulted in a reduction of the "available coverages" under the tortfeasor's policy.[7]

Here, the hospital lien has not been paid, but as we recognized in *Adams*, "[t]he lien is against those liable to pay the patient's damages[;] . . . upon a showing that the tortfeasor paid the patient, a hospital may recover directly from the patient."[8] Therefore, the present scenario is sufficiently analogous to that in *Adams* that we reach the same conclusion here.[9] Accordingly, the trial court erred in ruling that the hospital lien did not reduce the amount of available coverages for purposes of evaluating the availability of UM coverage. We reverse and remand for proceedings consistent with this opinion.

*Judgment reversed and case remanded. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 7, 2009 —

*F. Glenn Moffett, Jr.*, for appellant.
*Harper, Waldon & Craig, Trevor G. Hiestand*, for appellee.

---

[6] See 298 Ga. App. at 250 (2).

[7] See id.

[8] (Citation omitted.) Id. at 253 (2) (citing *Dawson v. Hosp. Auth. &c.*, 98 Ga. App. 792, 793-794 (1) (106 SE2d 807) (1958); *Thomas v. McClure*, 236 Ga. App. 622, 624 (2) (513 SE2d 43) (1999) (a hospital could enforce its lien against money paid by a patient's uninsured motorist carrier)).

[9] Although the *Adams* decision garnered dissent, it was a result ultimately reached (i) on reconsideration, and (ii) by a seven-judge panel. We would do a disservice to the bar, bench, and integrity of the Court if we were to abandon the principle of stare decisis and disregard this recent precedent. As observed by Justice Jackson of the United States Supreme Court, "[u]nless the assumption is substantially true that cases will be disposed of by application of known principles and previously disclosed courses of reasoning, our common-law process would become the most intolerable kind of ex post facto judicial law-making." (Punctuation omitted.) *Davis v. Penn Mut. Life Ins. Co.*, 198 Ga. 550, 564 (3) (32 SE2d 180) (1944).