DECIDED OCTOBER 18, 2010 —
RECONSIDERATION DENIED NOVEMBER 23, 2010.

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, James B. McClung*, for appellants.
*Pendergast & Jones, Ezra B. Jones III, David J. Reed*, for appellees.

S09G1710. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. ADAMS.
(702 SE2d 898)

MELTON, Justice.

After being injured in an automobile accident, Randolph Adams (sometimes referred to as the insured) brought suit against the tortfeasor, who carried a $25,000 insurance policy with Nationwide. Pursuant to a negotiated settlement, Nationwide exhausted its coverage by paying (1) $15,782.34 to Adams and his attorney, and (2) $9,217.66 to Grady Hospital in order to satisfy a hospital lien for unpaid services rendered to Adams to treat his injuries. Because his damages exceeded $25,000, Adams filed a claim with his uninsured motorist carrier, State Farm, with whom Adams carried $100,000 worth of coverage. In response, State Farm paid Adams $75,000, contending that it was entitled to a credit for all of the coverage paid out by Nationwide. Adams, however, maintained that State Farm was not entitled to a credit for Nationwide's payment of Grady Hospital's lien.

The underlying lawsuit ensued, and based on the provisions of the uninsured motorist statute, the trial court granted summary judgment to State Farm. Adams then appealed that decision to the Court of Appeals. In *Adams v. State Farm Mut. Auto. Ins. Co.*, 298 Ga. App. 249 (679 SE2d 726) (2009), the Court of Appeals reversed the trial court, finding that State Farm was not entitled to a credit against Adams' coverage for the hospital lien paid by Nationwide. Thereafter, we granted State Farm's petition for certiorari to determine whether the Court of Appeals erred in extending the rationale of *Thurman v. State Farm Mut. Auto. Ins. Co.*, 278 Ga. 162 (598 SE2d 448) (2004), to the satisfaction of a hospital lien by the tortfeasor's liability insurer. For the reasons set forth below, we reverse.

Resolution of the issue in this case requires a review of the bedrock principles of uninsured motorist law set forth in OCGA § 33-7-11 (b) (1) (D) (ii), as well as the fundamental nature of a hospital lien imposed pursuant to OCGA § 44-14-470. OCGA § 33-7-11 (b) (1)

(D) (ii) (2000) provides that an uninsured motor vehicle includes one subject to:

> [b]odily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; and for this purpose available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

In summary, to determine whether a motor vehicle is underinsured, and thereby an uninsured motor vehicle, one must determine whether the injured party's uninsured motorist coverage exceeds the sum of the tortfeasor's full liability coverage minus payments of other claims (e.g., to other parties injured by the tortfeasor) or otherwise.

As recognized by a leading treatise, the purpose of this statute has been previously set forth by this Court.

> The purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. Stated otherwise, "[t]he purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage 'to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.'" *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980), quoting 7 AmJur2d "Automobile Insurance" § 293, pp. 934, 935 accord *Hambrick v. State Farm Fire & Cas. Co.*, 260 Ga. App. 266 (581 SE2d 299) (2003); *Phillips v. South West Mechanical Contractors, Inc.*, 254 Ga. App. 144, 147 (2) (b) (561 SE2d 471) (2002).

The Georgia uninsured motorist statute "is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary." *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 714 (177 SE2d 257) (1970).

Ga. Automobile Ins. Law § 29:1 (2010 ed.). It is this underlying purpose, not Georgia's full compensation rule, which must guide this case because no subrogation rights of *an insurer* are associated with a hospital lien. See *Holland v. State Farm Mut. Auto. Ins. Co.*, 236 Ga. App. 832 (2) (513 SE2d 48) (1999).[1]

To determine whether a tortfeasor's available coverage may be reduced by the payment of a hospital lien, one must consider the fundamental nature of the lien, itself. OCGA § 44-14-470 (b) provides:

> Any person, firm, hospital authority, or corporation operating a hospital, nursing home, or physician practice or providing traumatic burn care medical practice in this state shall have a lien for the reasonable charges for hospital, nursing home, physician practice, or traumatic burn care medical practice care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished or to the legal representative of such person on account of injuries giving rise to the causes of action and which necessitated the hospital, nursing home, physician practice, or provider of traumatic burn care medical practice care, subject, however, to any attorney's lien. The lien provided for in this subsection is only a lien against such causes of action and shall not be a lien against such injured person, such legal representative, or any other property or assets of such persons and shall not be evidence of such person's failure to pay a debt. . . .

At its most basic level, this statute recognizes that a hospital is entitled to directly bill the patient for its services and to rely solely on the patient to pay for medical services rendered. To ensure payment to the hospital, the statute grants the hospital a lien against a patient's cause of action. This cause of action refers to the patient's recourse against a tortfeasor for causing the patient's injuries. This

---

[1] For this reason, *Thurman*, supra, 278 Ga. 162, is distinguishable. Moreover, *Thurman* involved the imposition of a federal lien from which reimbursement was mandatory, and the analysis and equities in that case are not applicable to the present matter.

recourse is represented by a claim brought against a tortfeasor for personal injuries and associated economic damages, such as a hospital bill. In turn, the tortfeasor, where insured, may look to his insurance company to make liability payments to the patient to cover the patient's economic damages. These liability payments, in turn, are subject to the hospital's lien seeking reimbursement for services directly billed to the patient. In short, the lien allows the hospital to step into the shoes of the insured for purposes of receiving payment from the tortfeasor's insurance company for economic damages represented by the hospital bill.

Applied specifically to the facts of this case, the statute works in the following way: Grady Hospital provided medical treatment to Adams and directly billed him $9,217.66 for these services. Adams filed a claim against the tortfeasor for personal injuries and economic damages, including the cost of his treatment at Grady Hospital. To ensure that it would be paid for medical services, Grady Hospital was allowed a statutory lien against Adams' cause of action against the tortfeasor. Because the tortfeasor carried an insurance policy with Nationwide worth $25,000 in coverage payable to Adams as a result of the accident, Grady Hospital's lien attached to this payment. As a result, Nationwide was required to pay Grady Hospital, who stepped into Adams' shoes, the amount necessary to satisfy the hospital bill for which Adams was ultimately responsible.

Considering all of the foregoing, it is axiomatic that this payment to Grady Hospital was not a payment of "other claims or otherwise" under OCGA § 33-7-11 (b) (1) (D) (ii) for services rendered to Adams and for which Adams was personally responsible. Grady Hospital's bill is part of Adams' economic damages caused by the tortfeasor, and these economic damages are a part of Adams' cause of action against the tortfeasor and Nationwide, the tortfeasor's insurance company. Grady Hospital's lien attaches to Adams' cause of action. It does not create a new claim against Nationwide. To the contrary, it is merely a part of Adams' claim, and its payment represents partial satisfaction of Adams' claim. In other words, the payment inures directly to Adams' benefit for payment of a hospital bill for which he is directly responsible.

As stated above, the Georgia uninsured motorist statute "is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is the beneficiary." *Murphy*, supra, 226 Ga. at 714. Subtraction of a hospital lien from a tortfeasor's insurance coverage as the payment of other claims or otherwise defeats this purpose, as the resulting increase in underinsured motorist coverage has no relation to the insured's actual loss within the limits of the policies in issue. To the contrary, treatment of a

hospital lien as "other claims or otherwise" may actually lead to some amount of double recovery by an insured. If such treatment were allowed, "the personal injury claimant [could] obtain payment directly from his UM carrier up to the full amount of an outstanding hospital lien and then turn around and negotiate a compromise settlement with the hospital and *pocket the change*." (Emphasis supplied.) Ga. Automobile Ins. Law § 32:3 (2010 ed.). Such a result completely undermines the purposes of the uninsured motorist statute.

Nonetheless, the dissent fails to consider these issues, premising its holding on the following statement:

> If a valid hospital lien is paid by the tortfeasor's liability carrier, then the amount the insured receives is less than he would have received otherwise. Given the remedial purpose of the UM statute, it follows that the insured would be entitled to receive from his UM carrier the difference between his UM policy limit and the funds he actually received from the carrier after payment of the hospital lien.

This conclusion, however, misconstrues both the basic purpose of the UM statute as well as the fundamental nature of a hospital lien. When a tortfeasor's liability carrier pays a hospital lien to a hospital standing in the shoes of the insured, it does so *for the direct benefit of the insured*. The insured, then, receives all of the benefits from the payment, as his personal responsibilities for the hospital bill are satisfied. Therefore, the insured receives protection for his actual loss, within the limits of the policy or policies of which he is a beneficiary. The fact that the funds are paid to the hospital rather than the insured is irrelevant. The dissent overlooks this basic premise, for while it is true that payment of the lien directly to Grady Hospital does diminish the amount of insurance funds actually passing through Adams' hands, it does not diminish any of the *benefit* from insurance proceeds to which Adams is entitled under the operative insurance policies.[2] In other words, payment of the hospital lien (in addition to payment of the remaining $15,782.34 under the policy) gives Adams the full benefit of the maximum underinsured motorist coverage for which he contracted. The dissent's approach opens the door to a potential windfall to the insured because it treats payment of a hospital lien as if it had no impact on the tortfeasor's

---

[2] In fact, under the dissent's analysis, any payment, lien or otherwise, made by the tortfeasor's insurer to a third party for the injured insured's benefit could be used to ultimately increase underinsured coverage. This clearly contravenes the intent behind the statute.

liability, thereby increasing the exposure of the insured's UM carrier, even after the insured's medical expenses have been paid. Given that Adams received the benefit of having his hospital bill paid by insurance proceeds from Nationwide, the dissent's argument that the payment already made for Adams' benefit must be used to increase his underinsured coverage becomes illogical and in no way supports a remedial purpose due to the fact that *there is nothing to be remedied.*

The clear language of OCGA §§ 33-7-11 (b) (1) (D) (ii), 44-14-470 (b), and the longstanding rationale for these statutes, mandates that payment of a hospital lien should not be subtracted from a tortfeasor's total liability coverage to determine the underinsured coverage of an insured who has been injured in an accident.

*Judgment reversed. All the Justices concur, except Hunstein, C. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting.

I respectfully dissent because I believe State Farm is not entitled to a credit for the amount Nationwide paid Grady Hospital for its treatment of the injuries Mr. Adams sustained due to the negligent acts of the tortfeasor. OCGA § 33-7-11 (b) (1) (D) (ii) (2000) provides in pertinent part:

> . . . [A]vailable coverages under the bodily injury liability insurance and property damage liability insurance coverages on [an under-insured or uninsured] motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage. . . .

The Court of Appeals construed the language "payment of other claims *or otherwise*" to include a valid hospital lien paid by the tortfeasor such that State Farm's UM exposure was increased in the amount of the hospital's lien and that it could not offset the full $25,000 of the tortfeasor's liability limit. *Adams v. State Farm Mut. Auto. Ins. Co.*, 298 Ga. App. 249, 251-253 (679 SE2d 726) (2009). The Court of Appeals' final conclusion is correct.

Key to statutory construction is giving effect to the legislative intent. *Expedia, Inc. v. City of Columbus*, 285 Ga. 684 (4) (681 SE2d 122) (2009) ("A statute must be construed 'to give sensible and intelligent effect to all of (its) provisions and to refrain from any interpretation which renders any part of the statute meaningless.' [Cit.]"); *Mason v. The Home Depot U.S.A.*, 283 Ga. 271 (3) (658 SE2d 603) (2008) (when construing a statute, a court has a duty to give full

effect to the legislative intent). The UM statute is remedial in nature and must be broadly construed to accomplish the legislative purpose. *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980). More specifically, Georgia's uninsured motorist statute should be construed to "protect innocent victims from the negligence of irresponsible drivers." *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516 , 517-518 (480 SE2d 842) (1997) (UM statute was construed broadly to include a tractor in the term "motor vehicle" as found in OCGA § 33-7-11 (b) (1) (D)). Thus, the phrase "payment of claims or otherwise" must be construed broadly and remedially. Id. at 520.

Since the lien in question arises directly from the negligence of the tortfeasor, the hospital is entitled to recover from the patient's cause of action against the tortfeasor. OCGA § 44-14-470 (b). See also *Holland v. State Farm Mut. Auto. Ins. Co.*, 236 Ga. App. 832 (1) (513 SE2d 48) (1999) (hospital lien may attach to cause of action against tortfeasor's insurer).[3] If a valid hospital lien is paid by the tortfeasor's liability carrier,[4] then the amount the insured receives is less than he would have received otherwise. Given the remedial purpose of the UM statute, it follows that the insured would be entitled to receive from his UM carrier the difference between his UM policy limit and the funds he actually received from the tortfeasor's carrier after payment of the hospital lien. For example, in the absence of a valid hospital lien, there is no question appellee could recover $100,000 — $25,000 from the tortfeasor's insurer and $75,000 from appellant's UM carrier. However, because appellee was treated for injuries suffered in the accident, the hospital sought a lien pursuant to the hospital lien statute and received payment from the tortfeasor's liability carrier, the majority opinion effectively penalizes appellee by limiting his potential recovery to approximately $90,782.34. In this case, such a result is not in keeping with the legislative purpose of the UM statute to protect innocent drivers from irresponsible motorists and, as such, I cannot join the majority's opinion. Accordingly, I would affirm the decision of the Court of Appeals.

I am authorized to state that Chief Justice Hunstein joins in this dissent.

---

[3] Note that *Holland*, supra, is distinguishable from the instant case inasmuch as the injured party did not seek payment from his UM carrier and the Court of Appeals did not consider what, if any, effect of the hospital lien's payment by the tortfeasor's insurer had on available coverages under the UM statute.

[4] There is no statutory or other requirement that the hospital lien must be paid by the tortfeasor or the tortfeasor's liability carrier. A hospital lien may also be paid from UM proceeds. See *Chatham County Hosp. Auth. v. Barnes,* 226 Ga. 508 (175 SE2d 854) (1970) (a hospital debt arising out of an auto accident may be paid from UM funds).

DECIDED NOVEMBER 30, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Harper, Waldon & Craig, Thomas D. Harper, Kimberly A. McNamara*, for appellant.
*Chambers, Aholt & Rickard, Clyde E. Rickard III, Downey & Cleveland, Lauren R. Kruck, Rodney S. Shockley, Bryan M. Pulliam, Ryan A. Johnson, Sharon W. Ware, Jane N. Wilkes, Carlock, Copeland & Stair, William M. Cheves, Jr.*, for appellee.
*Wallace Miller III, Fulcher & Hagler, Sonja R. Tate, Turkheimer & Hadden, John D. Hadden, Robertson, Bodoh & Nasrallah, Mathew G. Nasrallah*, amici curiae.