A11A2065. SOUTHERN GENERAL INSURANCE COMPANY v. WELLSTAR HEALTH SYSTEMS, INC.
(726 SE2d 488)

DILLARD, Judge.

Southern General Insurance Company ("Southern General") seeks the reversal of the trial court's denial of its motion for summary judgment and grant of summary judgment to Wellstar Health Systems, Inc. ("Wellstar"), arguing that (1) a conflict between case law and statutory law requires Southern General to make payments in excess of policy limits with its insured and (2) the conflict in the law denies insurance companies equal protection. For the reasons set forth infra, we affirm the trial court's judgment.

To prevail on summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, when viewed in the nonmovant's favor, entitle the movant to judgment as a matter of law.[1] We review de novo a trial court's grant of summary adjudication, construing the evidence in the light most favorable to the nonmoving party.[2]

So viewed, the underlying facts are undisputed by the parties. The record reveals that Southern General issued an automobile liability policy to its insured with a policy limit of $25,000. In September 2007, the insured's vehicle collided with a bicycle ridden by Norman Gray. Gray's left leg was fractured as a result of this

---

[1] *See, e.g., Pew v. One Buckhead Loop Condo. Ass'n, Inc.*, 305 Ga. App. 456, 456 (700 SE2d 831) (2010); *see also* OCGA § 9-11-56 (c).

[2] *See, e.g., Pew*, 305 Ga. App. at 456.

accident, and he sought treatment at Wellstar, with medical expenses totaling $22,047.50.

Thereafter, in October 2007, Wellstar notified Gray and Southern General of its intent to file liens "for the cost of [the] treatment against recoveries realized from any and all causes of action accruing to [Gray] as a result of [the] accident." The following month, Wellstar in fact filed two hospital liens covering the total hospital and treatment charges incurred by Gray.[3]

But before Wellstar filed a lien, Southern General offered to settle with Gray in the amount of $25,000 (i.e., the applicable policy limits). The settlement letter noted that Wellstar's hospital lien had been discussed and that Southern General had "confirmation that this lien will be satisfied or that we and our insured will be indemnified from this lien prior to issuing our settlement check." The insurer indicated that the settlement check and a general release would be issued after Gray and his attorney signed an enclosed lien statement. But on October 24, 2007, Gray sent a letter to Southern General, demanding that the company tender its policy limits within five days in light of *Frickey v. Jones*.[4]

Southern General responded the following day as to having received the demand letter, and the company enclosed a standard release from liability. Southern General requested that Gray's attorney review the release and agree to have Gray sign it "to conclude his bodily injury claim." The letter further directed that if Gray agreed with the release, Southern General would forward a check for $25,000. The general release included the following provision:

> The undersigned further warrants and represents that there are no medical, hospital or other liens and no claims by any person, firm, corporation or other entity against the consideration paid herein. The undersigned agrees, in consideration of the payment herein, to indemnify and hold said Payer(s) harmless for any and all claims made against said Payer(s) for medical expenses, hospital expenses or any other expenses related or claimed to be related to treatment or services rendered to the undersigned for injuries or claims

---

[3] The liens stated that Wellstar
claim[ed] a lien on all sums and amounts, whether in property or money, paid to the above named patient or their legal representative by any person, firm or corporation . . . , if any, as a settlement, as a release, or as a judgment or as consideration for a covenant not to sue when said sum or amounts represent damages or compensation for the patient's injuries for which [Wellstar] has rendered its services to such injuries.

[4] 280 Ga. 573 (630 SE2d 374) (2006).

arising out of the aforementioned occurrence, including the payment of attorneys fees and expenses.

On October 26, 2007, Gray's attorney responded that his client was "willing to sign a general release but not an indemnification agreement." Thereafter, by check dated October 29, 2007, Southern General tendered $25,000 to Gray and his attorney. And on October 31, 2007, Gray returned a signed release to Southern General that did not include the aforementioned indemnification provision.

This prompted Wellstar to file suit against Southern General, alleging that after receiving notice of Wellstar's hospital liens, "Southern General willfully ignored the lien[s] and made payments directly to the injured person . . . and made no payment to [Wellstar]." Thus, Wellstar sought $22,047.50 from Southern General in addition to attorney fees pursuant to OCGA § 44-14-473 (a).[5] Southern General then filed for summary judgment, alleging that the settlement was made in compliance with Gray's time-limit demand to avoid the result in *Frickey v. Jones*.[6] Specifically, Southern General argued that the precedents established by our Supreme Court in *Frickey* and *Southern General Insurance Co. v. Holt*[7] are irreconcilable with the hospital-lien provisions contained in OCGA §§ 44-14-470 and 44-14-473 because an insurance company could be required to make payments in excess of the policy limits with its insured. Southern General further argued that it was denied equal protection by this alleged conflict in the law.

The trial court denied Southern General's motion for summary judgment, explaining that "[t]he question to be decided is whether [Southern General's] tender of its policy limits to Gray upon receipt of Gray's unconditional time-limited demand is a defense to Wellstar's action to enforce its lien." And the trial court decided that it was not.

Specifically, the trial court held that if Southern General had "satisfied Wellstar by paying the hospital bill as part of the insurance proceeds, Gray would have received the full benefit of the insurance proceeds he demanded," and therefore, Southern General "would not have been exposed to a claim for bad faith in its failure to settle the

---

[5] Southern General in turn filed suit against Gray, alleging that if Southern General were found liable to Wellstar, Gray should be liable to Southern General "for part or all of any sums it is required to pay [Wellstar]." This action ended in a default judgment against Gray, with Gray ordered to "indemnify Southern General for all or any part of a judgment entered in favor of [Wellstar]."

[6] 280 Ga. 573 (630 SE2d 374) (2006).

[7] 262 Ga. 267 (416 SE2d 274) (1992).

claim within policy limits based on the time-limited settlement offer by Gray." And because the trial court did not find the case and statutory law irreconcilable, it did not address Southern General's constitutional argument before denying summary judgment to Southern General and sua sponte granting same to Wellstar. This appeal by Southern General follows, in which the company makes the same two arguments to this Court that it did below.

1. Southern General first argues that *Frickey* and *Holt*, when coupled with OCGA §§ 44-14-470 and 44-14-473, impermissibly set up an insurance company "to pay in excess of its contractually agreed policy limits because it cannot both unconditionally accept a time limit demand, and satisfy the statutorily enforced hospital lien." We disagree.

At the outset, it is necessary to address an insurance company's responsibilities in the face of settlement demands and hospital liens.

First, when faced with a time-limit settlement demand, "[a]n insurance company may be liable for damages to its insured for failing to settle the claim of an injured person [when] the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the claim."[8] And in deciding whether to settle a claim within the applicable policy limits, "the insurance company must give equal consideration to the interests of the insured."[9] Whether the insurer "has accorded the insured the same faithful consideration it gives its own interest" is a question for a jury, which must be decided in view of existing circumstances.[10] But an insurance company does not act in bad faith "solely because it fails to accept a settlement offer within the deadline set by the injured person's attorney."[11] Instead, the issue is whether "all the facts show sufficient evidence to withstand an insurance company's motion for directed verdict and permit a jury to determine whether the insurer acted unreasonably in declining to accept a time-limited settlement offer."[12]

Second, as to an insurance company's obligation to satisfy a

---

[8] *Holt*, 262 Ga. at 268 (1).

[9] *Id.*; *see also Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 685 (1) (580 SE2d 519) (2003) ("The rationale is that the interests of the insurer and insured diverge when a plaintiff offers to settle a claim for the limits of the insurance policy. The insured is interested in protecting itself against an excess judgment; the insurer has less incentive to settle because litigation may result in a verdict below the policy limits or a defense verdict.").

[10] *Holt*, 262 Ga. at 269 (1) (punctuation omitted).

[11] *Id.*

[12] *Id. See generally Kingsley v. State Farm Mut. Auto. Ins. Co.*, 353 FSupp.2d 1242, 1248-54 (2) (a)-(b) (N.D. Ga. 2005) (providing an overview of Georgia law with regard to settlement demands).

hospital lien, OCGA § 44-14-470 provides that

> [a]ny person, firm, hospital authority, or corporation operating a hospital . . . in this state shall have a lien for the reasonable charges for hospital . . . care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the care was furnished . . . on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care . . . . The lien provided for in this subsection is only a lien against such causes of action and shall not be a lien against such injured person . . . or any other property or assets of such persons and shall not be evidence of such person's failure to pay a debt. . . .[13]

As our Supreme Court has explained, "the lien allows the hospital to step into the shoes of the insured for purposes of receiving payment from the tortfeasor's insurance company for economic damages represented by the hospital bill."[14] And after a hospital lien has been filed, "[n]o release of the cause or causes of action . . . shall be valid or effectual against the lien . . . unless the holder thereof shall join therein or execute a release of the lien . . . ."[15] Moreover, "the claimant or assignee of the lien may enforce the lien by an action against the person, firm, or corporation liable for the damages *or such person, firm, or corporation's insurer.*"[16]

Southern General considers these to be competing duties and argues that under our Supreme Court's settlement cases of *Frickey* and *Holt*, it was "left with no choice but to unconditionally accept Gray's demand [to settle within the policy limits] or face liability of any excess exposure for a bad faith refusal to settle." But the actual holdings in these cases belie Southern General's assertion that our Supreme Court has created precedents that "impermissibly set[ ] up an insurance company to pay in excess of its contractually agreed policy limits because it cannot both unconditionally accept a time limit demand[ ] and satisfy the statutorily enforced hospital lien."

---

[13] OCGA § 44-14-470 (b); *see also State Farm Mut. Auto. Ins. Co. v. Adams*, 288 Ga. 315, 317 (702 SE2d 898) (2010) ("[T]his statute recognizes that a hospital is entitled to directly bill the patient for its services and to rely solely on the patient to pay for medical services rendered. To ensure payment to the hospital, the statute grants the hospital a lien against a patient's cause of action. This cause of action refers to the patient's recourse against a tortfeasor for causing the patient's injuries.").

[14] *Adams*, 288 Ga. at 318.

[15] OCGA § 44-14-473 (a).

[16] *Id.* (emphasis supplied). *But see Integon Indem. Corp. v. Henry Med. Ctr., Inc.*, 235 Ga. App. 97, 100 (1) (b) (508 SE2d 476) (1998) (holding that hospital lien statute did not permit lien-holder to enforce the lien against tortfeasor's insurance company because statute, at the time, did not so allow), *abrogated by statute*, 2002 Ga. L. p. 1429, § 4 (codified at OCGA § 44-14-473 (a)).

Indeed, in *Frickey*, our Supreme Court held that no binding settlement agreement was reached between an insurance company and an injured party when, in response to a demand letter from the injured party, the insurance company required an additional act—namely, the resolution of all actual and potential liens of health care providers.[17] Thus, the holding in *Frickey* was limited to issues of offer and acceptance (i.e., the enforceability of a settlement agreement).[18] And in *Holt*, when an insurance company contended that it was improperly denied a directed verdict on the issue of bad faith, our Supreme Court merely held that there was a jury question as to the company's *potential* negligence or bad faith in refusing to settle for the policy limits when (1) liability was clear *and* (2) the injured individual's special damages *exceeded* the applicable policy limits.[19] Given these holdings, we agree with the trial court's conclusion that Southern General's argument is misplaced.

To begin with, we are not at all convinced that Gray's time-limit demand was even sufficient to invoke a *Holt*-scenario given the five-day time limit and a lack of documentation to show that special damages actually *exceeded* Southern General's policy limits.[20] Nevertheless, the question before us is whether an insurance company's common law and statutory duties are reconcilable under the law, and we agree with the trial court that they are. Like the trial court, we conclude that it is possible for an insurance company to create a "safe harbor" from liability under *Holt* and its progeny when (1) the insurer promptly acts to settle a case involving clear liability and special damages in excess of the applicable policy limits, and (2) the *sole* reason for the parties' inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens.

Consider the following hypothetical: An insurance company—faced with a situation of clear liability and special damages in excess

---

[17] *Frickey*, 280 Ga. at 575-76.

[18] *See id.*; *see also Mealer v. Kennedy*, 290 Ga. App. 432, 436 (659 SE2d 809) (2008) (noting that the Supreme Court held in *Frickey* that "the purported acceptance did not create an enforceable agreement").

[19] *Holt*, 262 Ga. at 269 (1).

[20] *See id.* ("Nothing in this decision is intended to lay down a rule of law that would mean that a plaintiff's attorney under similar circumstances could 'set up' an insurer for an excess judgment merely by offering to settle within the policy limits and by imposing an unreasonably short time within which the offer would remain open."); *see also Brightman*, 276 Ga. at 685 (specifying that *Holt* held that an insurer has "a duty to its insured to respond to the plaintiff's deadline to settle the personal injury claim within the policy limits when the insurer [has] knowledge of clear liability and special damages *exceeding* the policy limits" (emphasis supplied)); *Holt*, 262 Ga. at 269 (1) (plaintiff "had medical bills and lost wages exceeding the limits of [the insurance] policy").

of the policy limits—offers in a timely fashion to tender its policy limits to the plaintiff, subject to a reasonably and narrowly tailored provision assuring that the plaintiff will satisfy any hospital liens from the proceeds of such settlement payment. For example, the insurance company could request that plaintiff's counsel or a third party hold a portion of the settlement proceeds (in an amount equal to that of the hospital lien) in escrow to allow the plaintiff an opportunity to investigate the validity of the liens and to negotiate with the hospital. And once the relevant lien-resolving documents have been executed by the parties, the held-back settlement funds could then be disbursed to the plaintiff. But if the insurer made such an offer or counteroffer (in a timely and reasonable fashion) and the plaintiff unreasonably refused to give the requested assurance, the insurer is (at that point) under no obligation to tender policy limits directly to the plaintiff. Indeed, a plaintiff who unreasonably refuses to give such an assurance does so at his or her own peril because the insurance company would thereafter have no obligation to negotiate with the hospital or otherwise advocate on the plaintiff's behalf. Instead, the insurer would be free (at that point) to simply verify the validity of any liens, make payment directly to the hospital, and then disburse any remaining funds to the plaintiff.[21]

If an insurer so reacted to a plaintiff's unreasonable refusal to assure satisfaction of hospital liens as a condition of receiving policy limits, the insurer would create a safe harbor from liability under *Holt* and its progeny.[22] And in such a scenario, when the failure to settle a *Holt*-scenario claim is based *solely* on the plaintiff's unreasonable refusal to agree to a reasonably and narrowly tailored provision assuring that any hospital liens will be satisfied from the settlement proceeds, that cannot, as a matter of law, constitute a bad faith failure to settle when the insurer is merely attempting to comply

---

[21] The hypothetical posited *supra* should in no way be read as condoning or encouraging an insurance company to make payment directly to a hospital *before* engaging in good-faith settlement negotiations with a plaintiff. And while we leave the answer to this question for another day, it is possible that an insurer would be liable under *Holt* and its progeny if the company made payment directly to the hospital before even attempting to negotiate with the plaintiff.

[22] *Cf. Brightman*, 276 Ga. at 687 (2) ("[A]n insurance company faced with a demand involving multiple insurers can create a safe harbor from liability for an insured's bad faith claim under *Holt* by meeting the portion of the demand over which it has control, thus doing what it can to effectuate the settlement of the claims against the insured."); *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 191 (686 SE2d 93) (2009) (discussing *Brightman* and explaining that its safe harbor provision "protects an insurer from liability under the reasonableness standard based on an allegation that it failed to satisfy a settlement condition over which it had no control" (emphasis omitted)).

with its legal obligations.[23] Put another way, no reasonable jury could conclude that an insurer has refused to settle a *Holt*-scenario case in bad faith when the only reason for the insurer's refusal to settle with the plaintiff is the insurer's insistence that any settlement payment to plaintiff be conditioned on the satisfaction of hospital liens that the insurer is obligated by statute to pay. In sum, the hypothetical scenario posited supra describes circumstances quite different from those in which an insurer has arguably acted unreasonably, as was the situation in *Holt* and subsequent cases that have applied the rule from *Holt*.[24]

In some sense, the hypothetical outlined supra was also suggested by the trial court when it denied Southern General's motion for summary judgment. The trial court extended the logic employed by our Supreme Court to the interplay between uninsured motorist coverage and hospital liens to create a safe harbor for insurance companies. And this lends further support to what we suggest supra. Indeed, in the context of uninsured motorist coverage and hospital

---

[23] *See McDonald v. Home State County Mut. Ins. Co.*, No. 01-09-00838-CV, 2011 WL 1103116, at *6 (V) (A) (Tex. App. March 24, 2011) (holding that when plaintiff's settlement demand did not also include an assurance that plaintiff would satisfy hospital liens, the demand "failed to propose reasonable terms such that an ordinarily prudent insurer would have accepted them and assumed for itself the risk that the liens would be enforced"); *see also Fortner*, 286 Ga. at 190 ("Whether an insurance company acts in bad faith in refusing to settle depends on whether the insurance company acted reasonably in responding to a settlement offer, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests the same consideration that it gives its own."). *Cf. Jimenez v. Chicago Title Ins. Co.*, 310 Ga. App. 9, 12 (2) (712 SE2d 531) (2011) (discussing bad faith in a different context but explaining that it "may be shown by demonstrating that under the policy and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment" (punctuation omitted)). *But see Butler v. First Acceptance Ins. Co.*, 652 FSupp.2d 1264, 1277 (II) (B) (N.D. Ga. 2009) (applying Georgia law and holding that insurance company's response to plaintiff's settlement demand was a counteroffer when it requested assurance that plaintiff would satisfy liens, and this presented question of fact as to reasonableness/bad faith).

[24] *See Holt*, 262 Ga. at 276 (1) (question of fact existed as to whether insurance company "acted unreasonably in declining to accept a time-limited settlement offer" when liability was clear and documentation established that damages exceeded the policy limits); *see also Dickerson v. Am. Nat'l Prop. & Cas. Co.*, No. 3:07-CV-111, 2009 WL 1035131, at *6-8 (I) (M.D. Ga. April 16, 2009) (applying *Holt* and holding that question of fact existed as to whether insurance company acted in bad faith when it requested medical records and did not accept settlement demand after receiving sufficient documentation to show that damages exceeded policy limit); *Whiteside v. Infinity Cas. Ins. Co.*, No. 4:07-CV-87, 2008 WL 3456508, at *11-12 (III) (B) (1) (M.D. Ga. Aug. 8, 2008) (applying *Holt* and holding that question of fact existed as to whether insurance company acted in bad faith when it failed to respond to multiple settlement demands when company knew injuries were serious and policy limit was low); *Hulsey v. Travelers Indem. Co. of Am.*, 460 FSupp.2d 1332, 1335 (II) (B) (N.D. Ga. 2006) (applying *Holt* and holding that although insurance company claimed it did not make payment due to a question regarding extent of coverage, plaintiff presented evidence that the company knew or should have known the answer to the question, which was sufficient to reach a jury on the question of bad faith failure to settle).

liens, our Supreme Court has held that a hospital bill is part of an injured individual's economic damages caused by a tortfeasor and that these economic damages are part of the injured individual's cause of action against the tortfeasor and the tortfeasor's insurance company.[25] Thus, payment to a hospital can either represent full or partial satisfaction of the injured individual's claim, and the "payment inures directly to [the injured individual's] benefit for payment of a hospital bill for which he is directly responsible."[26]

Accordingly, in the case sub judice, because Wellstar's hospital liens were part of Gray's claim, after negotiating with Gray and receiving Gray's unreasonable refusal to assure payment of same, Southern General could have satisfied Gray's claim by verifying the liens, making payment directly to Wellstar, and then remitting any balance of the policy limits to the plaintiff. Because in doing so, "Gray would have received the full benefit of the insurance proceeds he demanded." And this comports with our Supreme Court's express disapproval of "placing an affirmative duty on the [insurance] company to engage in negotiations concerning a settlement demand that is *in excess of the insurance policy's limits*," instead allowing an insurer to create a safe harbor from liability on a bad-faith claim "by meeting the portion of the demand over which it has control, thus doing what it can to effectuate the settlement of the claims against its insured."[27]

In the case sub judice, when Gray demanded Southern General's policy limits without also agreeing to assure satisfaction of Wellstar's hospital liens, Southern General was effectively faced with a settlement demand in excess of its policy limits. Thus, had Southern General verified the validity of the liens, made payment directly to Wellstar, and then paid the remainder of its policy limits to Gray, Southern General would have created a safe harbor from liability under *Holt* and its progeny. Therefore, the trial court did not err in denying summary judgment to Southern General and granting same to Wellstar.[28]

2. Southern General also argues that it has been denied equal

---

[25] *Adams*, 288 Ga. at 318.

[26] *Id.*

[27] *State Farm Auto. Ins. Co. v. Metro. Prop. & Cas. Ins. Co.*, 284 Ga. App. 430, 434 (643 SE2d 895) (2007) (punctuation omitted); *see also Brightman*, 276 Ga. at 687 (2) ("[W]e disapprove of . . . placing an affirmative duty on the [insurance] company to engage in negotiations concerning a settlement demand that is in excess of the insurance policy's limits.").

[28] In so holding, we further note that even if we agreed with Southern General that *Frickey* and *Holt* were irreconcilable with the statutory law covering hospital liens, those decisions are nevertheless binding precedent on this Court. *See* Ga. Const. Art. 6, § 6, ¶ VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *see also State v. Smith*, 308 Ga.

protection because the interplay between the case law and statutory law "places it in a position of liability in which no self-insured or uninsured driver would ever be placed." Given our holding in Division 1, we need not address this argument. Additionally, this enumeration is not properly before us because the trial court did not rule on the constitutional question.[29] Thus, this enumeration is not ripe for appellate consideration.[30]

Accordingly, for all the foregoing reasons, we affirm the trial court's judgment.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED MARCH 20, 2012.

*Swift, Currie, McGhee & Hiers, Kenneth M. Barre, Douglas L. Clayton*, for appellant.

*Elizabeth S. Richards, Clinton A. Harkins*, for appellee.

---

App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.").

[29] *See City of Decatur v. DeKalb County*, 284 Ga. 434, 438 (2) (668 SE2d 247) (2008) (holding that Court of Appeals was without jurisdiction to consider constitutional issue because the trial court did not specifically or distinctly rule on the issue).

[30] *See Decatur Fed. Sav. & Loan Ass'n v. Litsky*, 207 Ga. App. 752, 755 (2) (429 SE2d 300) (1993) (although trial court "took note" of constitutional argument in order, the issue was not ruled on and there was no ruling to review on appeal).