A11A1751. ERTURK v. GEICO GENERAL INSURANCE COMPANY.
(726 SE2d 757)

DOYLE, Presiding Judge.

This appeal arises from the denial of summary judgment regarding an estate's attempt to collect a claim from the decedent's uninsured motorist coverage. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The undisputed facts of the record establish that Cuneyt Erturk sustained fatal injuries in a car accident on October 25, 2008, when he was hit by William Paul Davis IV. Trivilla A. Erturk, Cuneyt's widow, individually and as the court-appointed administrator of the estate of Cuneyt Erturk, settled claims with Davis's insurer, State Farm Insurance, for the $100,000 limit of the policy carried on the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

vehicle.[2] The settlement was apportioned with $99,000 to the wrongful death claim ("the Widow") and $1,000 to the survival claim ("the Estate").

At the time of the accident, Cuneyt carried a motor vehicle insurance policy issued by GEICO General Insurance Company ("Geico"), which contained uninsured motorist coverage in the amount of $25,000. In November 2009, Erturk filed a claim on behalf of the estate contending that it was "underinsured," pursuant to OCGA § 33-7-11, by $24,000. Geico denied the claim, and Erturk thereafter filed the instant suit for breach of contract. The parties filed cross-motions for summary judgment on the issue of whether Erturk could collect from Geico under OCGA § 33-7-11, and the trial court agreed with Geico.

Erturk now appeals from the trial court's denial of her motion for summary judgment, arguing that the court erred by finding that the wrongful death claim and survival claim were derivative and that the Estate was not covered by the Geico uninsured motorist policy.

The 2008 version of OCGA § 33-7-11 (b) (1) (D) (ii) applicable to this case stated that an uninsured motor vehicle includes one subject to

> [b]odily injury liability insurance and property damage liability insurance with available coverages which are less than the limits of the uninsured motorist coverage provided under the insured's insurance policy, but the motor vehicle shall only be considered to be uninsured for the amount of the difference between the available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; and for this purpose available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage.

Generally then, an uninsured motorist provider has no exposure to liability if the policy limits of the tortfeasor's liability insurance

---

[2] The named insured was actually Susanne G. Davis, which distinction has no bearing on the issue before us.

equals or exceeds the policy limits of the uninsured motorist coverage.[3] As explained by the Supreme Court of Georgia in *State Farm Mut. Automobile Ins. Co. v. Adams*,[4]

> to determine whether a motor vehicle is underinsured, and thereby an uninsured motor vehicle, one must determine whether the injured party's uninsured motorist coverage exceeds the sum of the tortfeasor's full liability coverage minus payments of other claims (e.g., to other parties injured by the tortfeasor) or otherwise.[5]

Normally then, the injured party is limited to the per-person limit of the tortfeasor's liability insurance unless the injured party carries uninsured motorist coverage at or above the limits of the at-fault driver's coverage.[6]

In this case, the Estate contends that although the initial amount of Davis's liability insurance was $100,000 and therefore greater than Cuneyt's $25,000 uninsured motorist coverage, the maximum amount payable to the Estate from Davis's liability insurance was $1,000 after the Widow's $99,000 wrongful death settlement was subtracted.[7] Thus, Erturk argues, Davis's available liability coverage is less than the limits of Cuneyt's uninsured motorist policy "by reason of payment of other claims or otherwise," and the trial court therefore erred by finding that this was not the case.

"[T]he starting point for interpretation of contracts for insurance is the contract itself,"[8] and turning to the language of the policies here, we find that Davis's liability policy defines "bodily injury" as "bodily injury to a person and sickness, disease, or death that results from it." Davis's State Farm policy further explains that

> [t]he limit shown under "Each Person" [on the declarations page for bodily injury coverage] is the most we will pay [here, $100,000] for all damages resulting from bodily injury to any one person injured in any one accident, including all dam-

---

[3] See *Crafter v. State Farm Ins. Co.*, 251 Ga. App. 642, 644 (554 SE2d 571) (2001).

[4] 288 Ga. 315 (702 SE2d 898) (2010).

[5] Id. at 316.

[6] Cf. *Jefferson Ins. Co. v. Thomas*, 278 Ga. App. 89 (628 SE2d 171) (2006), citing *Crafter*, 251 Ga. App. at 642.

[7] The parties have stipulated that the Estate could establish damages greater than $25,000 in its survival claim against Davis.

[8] *Anderson v. Mullinax*, 269 Ga. 369 (1) (497 SE2d 796) (1998).

ages sustained by other persons as a result of that bodily injury . . . regardless of the number of . . . claims made.[9]

In its uninsured motorist section, the Geico policy states that

[t]he limit of bodily injury liability for Uninsured Motorists Coverage stated in the declarations as applicable to each person is the limit of our liability for all damages, including those for care or loss of services or loss of consortium, due to bodily injury sustained by one person as the result of one accident.[10]

Here, the trial court properly determined that the wrongful death claim and survival claim were limited to the per-person liability of Davis's bodily injury liability insurance — that the depletion of $99,000 of Davis's liability insurance by the Widow did not entitle the Estate to coverage by Cuneyt's uninsured motorist insurance. While the claims are two separate causes of action with two different beneficiaries under the law, the wrongful death claim here does not constitute an "other claim" for purposes of triggering uninsured motorist coverage under former OCGA § 33-7-11 (b) (1) (D) (ii).[11] As similarly explained by the Supreme Court of Georgia in *Thompson v. Allstate Ins. Co.*,[12] the total payments for the claims of the Estate and the Widow would not exceed the per-person liability limit of Davis's insurance because the damage to both the Estate and the Widow "arises out of a personal injury to only one person."[13] An opposite "construction defies both the meaning and intent of the uninsured motorist statute."[14] Although the Estate and the Widow are collecting different damages resulting from Cuneyt's death, it does not follow that the per-person policy limits no longer apply. Accordingly, the trial court correctly granted summary judgment in favor of Geico.

*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

---

[9] (Emphasis omitted.)

[10] (Emphasis omitted.)

[11] See OCGA §§ 9-2-41; 51-4-2 (a). See also *Smith v. Mem. Medical Center*, 208 Ga. App. 26, 27-28 (1) (430 SE2d 57) (1993). Compare with *Stenger v. Grimes*, 260 Ga. 838, 839 (1) (400 SE2d 318) (1991).

[12] 285 Ga. 24, 26-27 (1) (673 SE2d 227) (2009).

[13] (Punctuation omitted.) Id. at 27 (1). See also *Stenger*, 260 Ga. at 839, n. 2 ("the estate's [Survivor's] claim, like [a] consortium claim . . . is similarly derivative in that it is based on the same injuries to one person") (punctuation omitted).

[14] *Young v. Maryland Cas. Co.*, 228 Ga. App. 388, 390 (1) (491 SE2d 839) (1997). Cf. *Adams*, 288 Ga. at 318-319 (explaining basic policy and purpose of the uninsured motorist statute). Compare with *Thurman v. State Farm Mut. Auto. Ins. Co.*, 278 Ga. 162, 165 (598 SE2d 448) (2004) (holding that plaintiff could recover from uninsured motorist carrier amount subrogated from plaintiff's recovery from tortfeasor's liability carrier by federal lien holders).

DECIDED MARCH 29, 2012.

*Gillis & Creasy, James L. Creasy III, Bell & Mulholland, Lloyd N. Bell*, for appellant.
*Wallace Miller III*, for appellee.