[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12999

_____

D.C. Docket No. 1:15-cv-02961-MLB

AMY MARIE KEMPER, as assignee of
CHRISTOPHER L. BROWN,

Plaintiff - Appellant,

versus

EQUITY INSURANCE COMPANY,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 28, 2020)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

We decide in this appeal whether Equity Insurance Company is entitled to summary judgment on a claim that it failed to settle—negligently or in bad faith—the demand of an injured claimant for its insured's policy limit under Georgia law. The district court ruled that *Southern General Insurance Co. v. Wellstar*, 726 S.E.2d 488 (Ga. App. 2012), provided Equity with a safe harbor that freed it from the rock-and-a-hard-place decision of choosing between lien exposure after paying the claim or exposure to a bad-faith lawsuit for failing to pay the claim. But there are numerous factual issues here surrounding the issue of negligence and bad faith, even bearing *Wellstar* in mind. Because we conclude that these questions should be resolved by a jury, we reverse the district court's grant of summary judgment in favor of Equity, and remand for trial.[1]

# I

On March 10, 2012, Christopher Brown crossed the center line of an undivided highway in Coweta County, Georgia while driving under the influence of

---

[1] Many of the lingering ambiguities regarding the scope of an insurer's duty with respect to time-limit demands have been addressed by the Georgia Legislature in O.C.G.A. § 9-11-67.1. The new law, passed in 2013 after the accident in this case, provides a list of terms that demand letters must include and gives recipients of such letters the right to seek clarification regarding terms of the demand, liens, and other relevant facts—without the request for clarification being deemed a counteroffer. Although § 9-11-67.1 does not decide the case at hand, it provides needed guidance to future parties embroiled in similar disputes. As a result, our opinion is of limited significance, and we write only for the parties.

drugs and alcohol and crashed into a motorcycle driven by Amy Kemper. She survived the collision but sustained serious injuries.

Equity, Mr. Brown's insurer, delegated authority to Statewide to settle Ms. Kemper's claim. After receiving some of Ms. Kemper's medical bills and related documents, and concluding that those bills exceeded Mr. Brown's $25,000 policy limit, Statewide sent Ms. Kemper a request for updated documentation pertaining to the accident, including all her medical bills incurred up to that point. At the hospital, with the help of an attorney, she drafted a demand letter offering to sign a limited release in exchange for payment of Mr. Brown's policy limit. The letter specified where Equity could send its check and provided a deadline. It also stated: "Please DO NOT contact me, or my friends as this demand is very simple." D.E. 224-11.

After internal discussions about how to respond, Statewide sent Ms. Kemper a check for the policy limit with a cover letter that read as follows:

> In concluding the settlement, we are entrusting that you place money in an escrow account in regards to any and all liens pending. This demand is being asserted to protect the lien's interest and in accordance with the recent case law, *Southern General Insurance Co. vs. WellStar Health System, Inc.*

D.E. 224-31.[2]

---

[2] Ms. Kemper did not retain her attorney until after she had received Statewide's response to her demand letter, but he had offered to help her draft the demand letter for free.

Ms. Kemper's attorney advised her to reject Statewide's demand. She did so and sued Mr. Brown in state court, ultimately obtaining a $10 million consent judgment against him. She then sued Equity for negligence or bad faith in state court after Mr. Brown assigned her his failure-to-settle claim, and Equity removed the case to federal court. On the parties' cross-motions for summary judgment, the district court granted Equity's motion and denied Ms. Kemper's motion.

## II

We review the district court's grant of summary judgment *de novo*. In doing so, we view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019).

## III

Under Georgia law, an insurer can be held liable for the negligent or bad-faith failure to settle a claim within a policy's limits when it had knowledge of clear liability and special damages exceeding that limit. *See S. Gen. Ins. Co. v. Holt*, 416 S.E.2d 274, 276 (Ga. 1992). An insurer deciding whether to settle or try a case must act as an "ordinarily prudent insurer," and may be liable if such an insurer "would consider [that] choosing to try the case created an unreasonable risk" of unfavorable results. *See Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003) (citing *U.S. Fid. & Guar. Co. v. Evans*, 156 S.E.2d 809, 811 (Ga. App.), *aff'd*,

4

158 S.E.2d 243 (Ga. 1967)).  Generally, a jury must decide the issue of negligent or bad-faith failure to settle.  *See Holt*, 416 S.E. 2d at 276.

In *Wellstar*, the Georgia Court of Appeals created a "safe harbor" for insurers who may be faced with failure-to-settle claims.  The safe harbor applies when "(1) the insurer promptly acts to settle a case involving clear liability and special damages in excess of the applicable policy limits, and (2) the *sole* reason for the parties' inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens."  *Wellstar*, 726 S.E.2d at 493.

Applying the *Wellstar* safe harbor standard, we conclude that there are simply too many disputed issues related to the failure-to-settle claim to grant summary judgment in favor of Equity.  Here are just a few of the facts that support Ms. Kemper's position that Equity acted in negligence or bad faith: (1) Statewide's outside counsel noted that Ms. Kemper was a state employee with likely insurance coverage for her medical bills, so there was no reasonable basis to fear liens or claims from her medical providers; (2) counsel nevertheless conducted a lien search and did not find any outstanding liens against Ms. Kemper; (3) Statewide's claim director stated that he would have conferred with counsel about including the escrow demand in its letter, and counsel explained that he had thought the demand was a bad idea because *Wellstar* likely did not apply as it had involved known liens; (4) the claim director could not identify how contacting Ms. Kemper would have helped Statewide

5

settle the claim, even absent her communications ban; (5) Statewide's adjuster did not know how Ms. Kemper could comply with the escrow demand; (6) Statewide's demand letter referred to "any and all liens pending" and was not limited to medical liens; and (7) the escrow demand was not limited in time, as it provided no express end point at which Ms. Kemper would be able to remove the funds from escrow.

Taken in the light most favorable to Ms. Kemper, the record does not lead to the inexorable conclusion that the *Wellstar* safe harbor applies. The parties disagree about whether Equity's/Statewide's response to Mr. Kemper's demand was reasonable under the circumstances, whether the escrow demand was narrowly tailored, whether Ms. Kemper's ban on communications was an unreasonable refusal to assure satisfaction of a known lien, and whether this communication ban was the "sole" reason for the parties' inability to reach a settlement.

## IV

We express no view about Ms. Kemper's likelihood of success at trial. We hold only that the record contains sufficient evidence to permit a reasonable jury to return a verdict in her favor. We reverse the grant of summary judgment in favor of Equity and remand for trial.

**REVERSED AND REMANDED.**